ROYAL LITTLE ET AL. *v.* UNITED NATIONAL INVESTORS CORPORATION

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 2—decided March 24, 1971

*Richard A. Silver,* with whom, on the brief, was *Robert Fain,* for the appellants (plaintiffs).

*Julius B. Kuriansky,* with whom was *Stephen M. Seelig,* for the appellee (defendant).

House, J. This case is a sequel to the case reported in 157 Conn. 44, 245 A.2d 567, under the name of *Little* v. *United Investors Corporation,* the defendant being the same corporation but having changed its name. In that appeal we affirmed the judgment of the trial court rendered in favor of the plaintiffs in their action to collect two notes of the defendant on which payment was in default. The present dispute is over the amount of interest due on that judgment. The defendant paid the principal amount of the judgment debt in the sum of $3,000,000, together with the sum of $395,352.11 representing attorneys' fees, costs and interest calculated at the rate of 6 percent from the date of the judgment. The plaintiffs claim that interest should have been paid at the rate of 9 percent from the date of the judgment. The difference amounts to $127,500. The parties presented the question to the trial court on a stipulation of facts and that court decided that the plaintiffs were entitled to interest at 6 percent on the judgment and not 9 percent and rendered judgment accordingly. It is from that judgment and on that narrow issue that this appeal has been taken.

The defendant's notes contained the provisions that "interest shall accrue at the rate of nine (9) per cent per annum on unpaid balances, before and after maturity, by acceleration or otherwise".

Section 52-349 of the General Statutes provides that "[l]egal interest on the amount of the judgment shall be collected on the execution issued thereon". The first question is, what is "legal interest"? The answer is found in chapter 663 of the General Statutes, entitled "Interest." The first section of that chapter, § 37-1, provides as follows: "LEGAL RATE. The compensation for forbearance of property

loaned at a fixed valuation, or for money, shall, in
the absence of any agreement to the contrary, be at
the rate of six per cent a year; and, in computing
interest, three hundred and sixty days may be con-
sidered to be a year." The basic controversy, then,
revolves about the meaning of the phrase, "in the
absence of any agreement to the contrary," as used
in that statute.

Parenthetically, we note that our statute on the
subject differs somewhat from those in most other
states. At common law judgments do not bear inter-
est but interest on judgments is now generally al-
lowed by virtue of statute. *Pierce* v. *United States,*
255 U.S. 398, 41 S. Ct. 365, 65 L. Ed. 697; 45
Am. Jur. 2d, Interest and Usury, §§ 59, 60; 47 C.J.S.,
Interest, § 40. In many states, including Florida,
Illinois, Montana and Indiana, the governing stat-
ute provides that the interest rate on judgments
shall be at a fixed rate. The Illinois statute is
typical of this type of statute: "Every execution
issued upon a judgment shall direct the collection
of interest thereon, from the date of the recovery of
the judgment until the same is paid at the rate of
6% per annum." Ill. Rev. Stat. c. 77, § 7. On the
other hand, many other states, including Arkansas,
Arizona, Georgia, Iowa, Nebraska, Nevada, Michi-
gan, Oregon and Washington, expressly provide for
interest at the contractual rate after judgment. The
Arizona statute is typical of this type: "A judgment
given on such agreement shall bear the rate of in-
terest provided for in the agreement, and it shall be
specified in the judgment." Ariz. Rev. Stat.
§ 44-1201B. Since the problem presented in this
case would only arise from judgments in contract
cases and then only where the statute was not clear
on its face and where the difference in the amount

of interest, if contested, was sufficient to warrant appeal, there is a dearth of relevant case law on the question and we find that because of the differing statutory provisions most of the few existing cases from other jurisdictions are of little help in the decision of this appeal.

Connecticut has by statute long provided for interest on judgments. The first enactment appears to be chapter 34 of the Public Acts of 1860. This is the predecessor of the present § 52-349 and provided that "lawful interest upon the amount of the judgment upon which such execution is issued shall form a part of the amount to be collected by the officer to whom such execution or executions may be directed and delivered". In the light of the continuance of this statutory direction down to the present General Statutes § 52-349, the common-law impediment to interest on judgments does not exist in Connecticut. The common-law principle was predicated on the theory that the note or contract which was the subject of suit merged in the judgment and technically there could be no agreement concerning the judgment. See *Bowers* v. *Hammond,* 139 Mass. 360, 31 N.E. 729. Section 52-349 expressly provides for legal interest on judgments and § 37-1 expressly provides that the legal rate of interest shall be 6 percent, "in the absence of any agreement to the contrary." We see no conceivable reason why such a proviso should be included in the statutory definition of "legal interest" unless the General Assembly recognized the right of the parties to agree on interest rates, subject to the limitations imposed by the usury statutes. Implicit in § 37-1 is the provision that if the parties have agreed on a rate of interest not prohibited by the usury law then that rate is the legal rate and only in the absence of such an

agreement is it 6 percent. This meaning is clear from reading the two statutes together.

The language of predecessor statutes and the construction placed on them by this court confirms the clearly expressed intention of the legislature in the enactment of these statutes. As distinguished from prohibitions against usury, the legal rate of interest appears to have been first set in chapter 16 of the Public Acts of 1872. This act provided: "When there is no agreement for a different rate of interest of money, the same shall be at the rate of six dollars upon one hundred dollars". In 1874 this statute was amended solely to change the rate from 6 percent to 7 percent. Public Acts 1874, c. 108. In 1877, the rate was changed back to 6 percent and the language was altered to read: "The compensation for forbearance of property loaned at a fixed valuation, or for money, shall in the absence of any agreement to the contrary be at the rate of six per cent a year". Public Acts 1877, c. 151. This provision has continued without change and is the present § 37-1 of the General Statutes defining "legal interest".

In *Beckwith* v. *Hartford, P. & F.R. Co.*, 29 Conn. 268, decided in 1860, this court was faced with the question of the rate of interest to be assessed in favor of bondholders against the defendants for the period after the railroad had defaulted on the payment of its bonds. The bonds carried interest at 7 percent pursuant to the authorization of Statutes, 1854, p. 750, § 23, but the usury statute prohibited interest at a greater rate than 6 percent. It was the contention of the defendants that although they were required to pay interest at 7 percent on the principal until it became due that after maturity the interest rate should be at 6 percent. The court rejected this contention, saying (p. 271): "And

the different rates thus agreed upon become the legal rates of interest in respect to particular contracts during their existence. And the rates of interest thus established by agreement must be presumed to be just and equitable under the circumstances, that is, a fair compensation in such case for the use of money between the parties during the time the contract had to run. Then why should we not presume, as between the same parties, that such continues a fair compensation for its use until the contract is performed, as well after as before the day when the principal was to be paid, and thus permit the rate of interest agreed upon to control the damages to be paid for the detention of the money as well as the interest for its use. There is no equity in favor of one rate of interest rather than another, where they are both legal, and within reasonable limits, and the defendants ought not to complain so long as it is in their power, by paying the principal, to protect themselves from paying what they thought a reasonable rate when they borrowed the money. The borrowers never could have expected to derive a benefit in respect to the rate of compensation to be derived from their breach of contract. . . . We therefore advise the superior court that the plaintiff is entitled to the same percentage for the detention beyond the day when the money was to be paid, that he was entitled to as interest before that day."

In *Adams* v. *Way,* 33 Conn. 419, 431, the court followed the *Beckwith* decision, stating that *Beckwith* "decided that the rule of damages for the detention of the principal after it became due, was the same as the rate of interest agreed upon by the parties."

Subsequently, in 1873, an act was passed provid-

ing that "in all suits in law or equity now pending, or which may hereafter be brought for the recovery of moneys loaned, no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due." Public Acts 1873, c. 87, § 2. This statute was construed in 1875 in *Hubbard* v. *Callahan,* 42 Conn. 524, which was an action on a note which provided for interest at the rate of 15 percent after maturity. It was held that the statute was not intended to, and did not, apply to contracts· in which there was an express agreement for the payment of a specified lawful rate of interest after maturity. With a reduction of the rate to 6 percent and other minor changes immaterial to our present discussion this statute (now § 37-3) has continued in effect as has its construction by the decision in *Hubbard* v. *Callahan,* supra. The statute is applicable to "damages for the detention of money after it becomes payable" in those cases in which the contract makes no provision as to the rate of interest after maturity but is not applicable in those in which, as here, a rate of interest, otherwise lawful, is prescribed as applying from and after the time when the principal becomes payable. This construction has not, so far as we can discover, been impaired, by statutory amendment or judicial decision, during the almost one hundred years which have elapsed since the decision was rendered. See *Personal Finance Co.* v. *Lillie,* 129 Conn. 290, 292, 27 A.2d 794; *Globe Investment Co.* v. *Barta,* 107 Conn. 276, 280, 140 A. 202.

*Hubbard* v. *Callahan,* supra, 527, posed the precise question: "May there be a valid contract for interest after the time of the maturity of a note until payment?" and answered it thus: "Why not? If we may take the language of the statute in its

common acceptation, no one would entertain a doubt that the parties could contract for a rate of interest after the money is due and while it remains unpaid, as well as before. There is no exception, qualification or limitation in the statute. If no rate of interest is specified, six per cent. is the legal rate; but if the parties agree upon the rate in writing, then the agreed rate becomes the legal rate in that case. There is nothing in the nature of the transaction, nor in the customary mode of loaning money, that makes it unreasonable or unjust to allow parties to contract for a rate of interest after maturity as well as before, but rather the contrary is true."

The 1872 act defining legal interest and the subsequent 1877 amendment to the statutory definition of legal interest adopting the language presently stated in § 37-1 is but a paraphrase of the language of the court in the *Hubbard* case, supra — 6 percent is the legal rate "but if the parties agree upon the rate in writing, then the agreed rate becomes the legal rate in that case." The legislature must be presumed to have been aware of this court's interpretation of the statutes involved. *State ex rel. Butera* v. *Lombardi,* 146 Conn. 299, 305, 150 A.2d 309; *Forman Schools, Inc.* v. *Litchfield,* 134 Conn. 1, 6, 54 A.2d 710. The legislative history of §§ 37-1 and 37-3, viewed in the light of the developing case law, can only lead to the unquestioned conclusion that the General Assembly by use of the phrase "in the absence of any agreement to the contrary" in § 37-1 defining the legal rate of interest to be paid on judgments intended to and did, within the limits of the usury restrictions, allow parties to agree on the rate of interest on judgments in such cases as this. In accord with our conclusion is the leading English case of *Economic Life Assurance Society*

v. *Usborne,* [1902] A.C. 147, 149, 150. See also *Shipman* v. *Bailey,* 20 W. Va. 140, 146, reaffirmed in *Turk* v. *McKinney,* 132 W. Va. 460, 52 S.E.2d 388.

Accordingly, since the agreement of the defendant was that "interest shall accrue at the rate of nine (9%) per cent per annum on unpaid principal balances, before and after maturity, by acceleration or otherwise" the rate of "legal interest" was thus fixed by the agreement of the parties and under the provisions of General Statutes §§ 52-349 and 37-1 the plaintiffs were entitled to interest on the judgment at that rate.

One further claim of the defendant requires comment. After publication of the decision of this court in the earlier case, *Little* v. *United Investors Corporation,* 157 Conn. 44, 245 A.2d 567, the defendant on August 1, 1968, pursuant to the provisions of Practice Book § 703, filed a notice of intention to file a motion for reargument. Thereafter, on August 13, 1968, the plaintiffs filed a motion for an order terminating the stay of execution on the judgments affirmed on that appeal. The motion asserted as a reason for the relief then requested that the defendant's notice of intention to file the motion for reargument was made for the purpose of delaying execution on the judgments so that the debt might continue at the more favorable rate of 6 percent rather than the 9 percent provided in the note. The defendant now asserts that that statement in the motion by the plaintiffs is a conclusive judicial admission that the legal rate of interest after judgment was at 6 percent and that the plaintiffs are bound thereby. With this assertion we do not agree. The statement was of an erroneous legal conclusion rather than an admission of fact. "Under such circumstances, the trial court would not have been

justified in concluding the rights of the plaintiff[s] by that statement. As a matter of fact, the record indicates clearly that the trial court did not do so, but reached its decision by an erroneous application of legal principles. In either event it was in error." *Farley-Harvey Co.* v. *Madden,* 105 Conn. 679, 684, 136 A. 586.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiffs in accordance with this opinion.

In this opinion the other judges concurred.