CADLE COMPANY *v.* DAVID D'ADDARIO, EXECUTOR (ESTATE OF F. FRANCIS D'ADDARIO), ET AL.
(AC 31174)
(AC 31674)
(AC 32066)

Gruendel, Robinson and West, Js.

224

Argued May 25—officially released September 6, 2011

*Gary S. Klein*, with whom was *Susan R. Briggs*, for the appellants-appellees (defendants).

*C. Donald Neville,* for the appellee-appellant (plaintiff).

*Opinion*

GRUENDEL, J. In these consolidated appeals, the defendants, David D'Addario and Lawrence D'Addario, as coexecutors of the estate of F. Francis D'Addario (decedent), appeal from the judgment of the trial court rendered in favor of the plaintiff, Cadle Company, in connection with a jury trial of a collection action. On appeal, the defendants claim that the court improperly (1) denied their motion to strike the plaintiff's prayer for relief, (2) granted the plaintiff's motion to strike their counterclaims, (3) denied their motion to set aside the verdict, and (4) awarded the plaintiff statutory postjudgment interest. We affirm the judgment of the trial court with respect to the defendants' first three claims but reverse its award of statutory postjudgment interest. Also, on cross appeal, the plaintiff claims that the court improperly held that it was not entitled to recover a delinquency charge provided for in a demand note (note) executed by the decedent.[1] We agree, and, accordingly, reverse that portion of the judgment of the trial court. The judgment is affirmed in all other respects.

The record reveals the following relevant facts and procedural history. In 1985, the decedent executed the note, which had a principal value of $1 million. Following his death in 1986, the defendants, the decedent's two sons, were appointed as coexecutors of the decedent's estate. In 1994, the Bank of New Haven (bank) transferred the note and all of its right, title, and interest therein to the plaintiff. In 2002, the plaintiff commenced this action to collect on the note. On March 29, 2006,

---

[1] The plaintiff also claims on cross appeal that the court improperly allowed the defendants to elicit testimony that principal payments were made on the note. Given our disposition of the appeals, we need not address this specific claim.

the defendants filed an answer and a three count counterclaim alleging: (1) violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.; (2) abuse of process; and (3) vexatious litigation, in violation of General Statutes § 52-568.[2] On September 1, 2006, the plaintiff filed a motion to strike the counterclaim in its entirety. The court initially granted in part the plaintiff's motion to strike and ultimately granted summary judgment in favor of the plaintiff with respect to all of the defendants' counterclaims.

The case proceeded to a jury trial. Before trial, both parties filed motions in limine seeking to exclude certain evidence. The plaintiff sought to exclude evidence of the amount that it had paid to purchase the note and certain evidence relating to the defendants' counterclaim. The defendants sought exclusion of any evidence that the amount of the plaintiff's claim exceeded the principal value of the note, or $1 million.

On May 28, 2009, the court addressed those evidentiary issues and ruled that the plaintiff would be allowed to adduce evidence that its claim exceeded $1 million. The court reserved judgment on the admissibility of the purchase price, ruling that the defendants would be permitted to lay the proper foundation for their proffer of evidence relating thereto. During trial, the court again addressed the plaintiff's motion in limine seeking to exclude evidence regarding the purchase price of the note and the defendants' counterclaim. The court ultimately excluded evidence of both. In so ruling, the court reasoned that such evidence was irrelevant and had the tendency to confuse the jury.

After the plaintiff's case-in-chief, the defendants moved for a directed verdict, claiming that the plaintiff had not proven a reasonable substitute interest rate for

[2] See footnote 10 of this opinion.

the bank's prime rate[3] and that it was not entitled to collect a "delinquency charge" of 2 percent per year[4] because it constituted a late fee prohibited by *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 671 A.2d 1303 (1996). The court denied the defendants' motion regarding the reasonable substitute interest rate, ruling that the plaintiff had presented sufficient evidence as to a reasonable substitute interest rate to reach the jury. Nonetheless, the court granted the defendants' motion regarding the delinquency charge, ruling that the plaintiff could not collect the delinquency charge as it constituted an impermissible late charge.

On June 3, 2009, the jury returned a verdict in favor of the plaintiff. Specifically, the jury found that the plaintiff had proven that the amount due on the note was $810,245.59, that the interest rate it sought was a fair and reasonable substitute interest rate for the bank's rate, that interest should accrue from July, 1990, and that the plaintiff was entitled to costs of collection. On June 11, 2009, the defendants filed a motion to set aside the verdict and for a new trial and moved for judgment in accordance with their motion for a directed verdict. The court denied those motions.

On March 1, 2010, the court rendered judgment for the plaintiff, awarding it $810,245.59 as the principal amount due under the note, interest accrued from June, 1990, to June 3, 2009, in the amount of approximately

---

[3] The note provides that the interest rate on the unpaid balance of the note would be the bank's prime rate plus 1.5 percent. By the time of trial, the bank closed, and the plaintiff offered evidence of a reasonable substitute interest rate.

[4] The note provides that the interest on the unpaid balance of the principal shall be the bank's prime rate plus 1.5 percent "together with, in addition to the above interest, if any payment of principal or interest is not paid when due, a Delinquency Charge equal to 2 % per annum of the unpaid principal balance hereof for the period from the date such payment is due until such payment is fully paid, whether or not a judgment is obtained . . . ."

$1.3 million, interest paid on the principal from June 4, 2009, to the date of the entry of judgment in the amount of $28,863.00, postjudgment interest at the rate of 10 percent from the date of judgment until the full amount is paid and costs of collection, including reasonable attorney's fees, in the amount of $435,369.54. On June 8, 2010, the defendants filed a motion for rectification and/or articulation concerning the court's award of postjudgment interest, and the motion was denied. These appeals followed. Additional facts will be set forth as necessary.

I

DIRECT APPEAL

A

The defendants first claim that the court improperly denied their motion to strike the plaintiff's prayer for relief. Specifically, the defendants claim that the plaintiff was not entitled to obtain a money judgment under General Statutes § 45a-400 and that the judgment rendered by the court was not a money judgment under General Statutes § 52-350a (13). We disagree.

The following additional facts and procedural history are relevant to the resolution of this claim. On May 13, 2004, the defendants moved to strike the prayer for relief in the plaintiff's amended complaint, filed May 10, 2004. The defendants claimed that the prayer for relief should be stricken for legal insufficiency because the statute the plaintiff brought the action under, § 45a-400, does not authorize a money judgment, damages, interest and costs, or attorney's fees. On May 27, 2004, the plaintiff filed an objection to the defendants' motion to strike. On July 6, 2004, the court denied the defendants' motion, concluding that the plaintiff's prayer for relief was properly pleaded.

Before addressing the merits of the defendants' claim that the court improperly denied their motion to strike, we set forth the applicable standard of review and legal principles governing our analysis. The purpose of a motion to strike "is to test the legal sufficiency of a pleading." (Internal quotation marks omitted.) *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). The motion to strike "contest[s] . . . the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) *Novametrix Medical Systems, Inc.* v. *BOC Group, Inc.*, 224 Conn. 210, 214–15, 618 A.2d 25 (1992). In addition, it may test "the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross-complaint . . . ." Practice Book § 10-39 (a) (2); see also *Carchidi* v. *Rodenhiser*, 209 Conn. 526, 531, 551 A.2d 1249 (1989).

"The standard of review in an appeal from the granting of a motion to strike is well established. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling . . . is plenary. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . For the purpose of ruling upon a motion to strike, the facts alleged in a complaint, though not the legal conclusions it may contain, are deemed to be admitted. . . . A motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." (Citations omitted; internal quotation marks omitted.) *Metcoff* v. *Lebovics*, 123 Conn. App. 512, 516, 2 A.3d 942 (2010).

Section 45a-400 sets out the procedure for when a claimant presents a claim to the fiduciary and the fiduciary does not disallow the claim within thirty days

following the limitation period in General Statutes § 45a-395. A claimant may then give written notice that he intends to bring an action on the claim within four months. If the claimant fails to bring an action within four months of the notice, the claimant is barred from bringing an action on his claim against the fiduciary.

Although our research reveals no binding authority addressing the precise statutory issue presented by the case at bar, General Statutes § 45a-363, the equivalent statute for claims against decedents' estates for decedents dying on or after October 1, 1987, has been explicitly recognized as purely procedural and not as providing a substantive cause of action. For example, in *Keller* v. *Beckenstein*, 122 Conn. App. 438, 444–45, 998 A.2d 838, cert. granted, 298 Conn. 921, 4 A.3d 1227, 5 A.3d 486 (2010), this court held that § 45a-363 does not provide a cause of action and could not confer subject matter jurisdiction on the Superior Court when it did not otherwise have subject matter jurisdiction because the claim was not ripe for adjudication. "[T]he purpose of [§ 45a-363] is to encourage the timely settlement of decedents' estates. [Section] 45a-363 is *purely procedural in nature*, governing the time within which to file a suit against an estate when a claim has been rejected by an executor or administrator." (Emphasis in original; internal quotation marks omitted.) Id., 444–45. "[T]he statute does not independently create a cause of action or confer jurisdiction on the Superior Court and, therefore, does not obviate the need for a plaintiff to plead a recognized cause of action over which the court has jurisdiction." Id., 445; see *Kubish* v. *Zega*, 61 Conn. App. 608, 620, 767 A.2d 148, cert. denied, 255 Conn. 949, 769 A.2d 62 (2001).

From these cases, we may infer that § 45a-400, like its counterpart, § 45a-363, does not itself provide a cause of action. Notwithstanding the fact that the plaintiff characterizes § 45a-400 as authorizing a cause of

action,[5] the statute is solely procedural in nature. Therefore, § 45a-400 does not determine whether the plaintiff was entitled to a money judgment, and the defendants' argument that the plaintiff cannot recover money damages because the statute does not authorize them must fail. This is a collection action to enforce the note and was recognized as such by the court. The plaintiff's amended complaint alleges a cause of action for collection and states that the defendants are liable to the plaintiff for the principal amount of the note, plus interest, costs, and attorney's fees as provided for in the note, and that the defendants have failed to tender the sum due.[6] The prayer for relief states that the "action is based upon an express agreement to pay a definite sum." In light of the foregoing, we conclude that the plaintiff's prayer for relief was legally sufficient.

Also, we reject the defendants' argument that the court's judgment does not fall within the ambit of § 52-350a (13) because it fails to call in whole or in part for the payment of a sum of money but, rather, only determined the amount of the plaintiff's claim. The court's March 1, 2010 judgment for the plaintiff orders the payment of the principal amount due under the note, as determined by the jury, as well as interest accrued from June, 1990, to June 3, 2009, costs of collection, and for postjudgment interest in the amount of 10 percent. The court's judgment orders the payment of a sum of money and, as such, is unequivocally a money

[5] The amended complaint states in relevant part that the plaintiff "brings suit, pursuant to . . . General Statutes [§] 45a-400, against David D'Addario and Lawrence D'Addario, Executors . . . ."

[6] We note that the plaintiff's amended complaint pleads a cause of action "pursuant to" § 45a-400. Our review of § 45a-400, as articulated in this opinion, does not provide a cause of action. Nonetheless, the fact that the complaint relied on § 45a-400 does not defeat the claim. Moreover, the defendants have not argued that, notwithstanding the plaintiff's reliance on § 45a-400, the plaintiff failed to plead adequately an action for collection on the note.

judgment. Accordingly, the defendants' claim to the contrary is meritless.

B

The defendants next claim that the court erred in granting the plaintiff's motion to strike their counterclaims for abuse of process, vexatious litigation, and CUTPA violations. Specifically, the defendants argue that they pleaded a proper factual basis for their counterclaims and that the counterclaims were legally sufficient. We disagree.

A brief overview of the prior litigation between these parties is necessary for the disposition of this claim. Litigation between the parties began in 1997, when the plaintiff filed a motion for an order with the Probate Court seeking the removal of the defendants as executors of the estate. The motion was denied, and the plaintiff appealed to the Superior Court. The case was dismissed by the Superior Court sua sponte. The plaintiff appealed to this court, and the matter was transferred to our Supreme Court. The Supreme Court affirmed the Superior Court's dismissal of the removal action but held that the plaintiff had a valid claim against the estate. See Cadle Co. v. D'Addario, 268 Conn. 441, 844 A.2d 836 (2004). The plaintiff also filed a federal breach of fiduciary duty action that was dismissed for a lack of subject matter jurisdiction. Cadle Co. v. D'Addario, United States District Court, Docket No. 3:01CV 1103 (AHN), 2005 WL 3499998 (D. Conn. 2005).

On March 29, 2006, the defendants filed their answer and a three count counterclaim alleging (1) a violation of CUTPA, (2) abuse of process and (3) vexatious litigation. The CUTPA counterclaim was based in part on alleged extrajudicial conduct that the defendants have labeled as the plaintiff's "campaign," referring to alleged attempts to pressure nonparties to the litigation, namely, other members of the D'Addario family or bene-

ficiaries of the D'Addario estate, to pay the debt. The CUTPA counterclaim also alleged that the plaintiff was inconsistent in its claims for the principal balance on the note and imposed the delinquency charge of 2 percent. All three counterclaims contained factual allegations about what the defendants have called the "litigation," which refers to the removal action and appeal and the federal breach of fiduciary duty action.

On September 1, 2006, the plaintiff moved to strike all three counts of the defendants' counterclaim. The court granted that motion on May 14, 2007. The court's memorandum of decision makes clear that the court misunderstood the basis for the counterclaims and dismissed them, believing that the underlying litigation was the present case.[7] The defendants subsequently filed a motion to reargue or reconsider the motion to strike the counterclaims in part because of the discrepancy between the bases for the counterclaims as pleaded and as interpreted by the court. On July 23, 2007, the court affirmed its decision to strike the vexatious litigation and abuse of process counterclaims but did not specifically address the issue raised by the defendants in their motion for articulation that the basis of the counterclaim was the removal case, not the present litigation.[8] The court also restored the CUTPA count, with the limitation that any paragraphs contained in the count would be stricken insofar as they alleged

---

[7] The court's memorandum of decision indicates that it assumed that the vexatious litigation and abuse of process claims were based on the present action, not the previous litigation between the parties and others. The defendants concede that the present action cannot serve as the basis for a claim of abuse of process or vexatious litigation.

[8] The court affirmed its decision granting the defendants' motion to strike the abuse of process and vexatious litigation claims, stating that "[t]he court agrees with the plaintiff that the facts as pleaded do not support claims of vexatious litigation and abuse of process, in brief, because [our] Supreme Court has found the plaintiff's claim to be valid, and, as a result, validated its right to pursue the present litigation."

that there was a breach of the covenant of good faith and fair dealing, that there was an abuse of process or that the plaintiff engaged in vexatious litigation.

On February 13, 2009, the plaintiff filed a motion for summary judgment as to the remaining CUTPA count. On May 13, 2009, the court granted the motion, thus eliminating the counterclaims entirely.[9]

Before addressing the merits of the defendants' specific claims on appeal, we set forth the applicable standard of review governing our analysis. Our review of a motion to strike is plenary. "A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim." (Internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 131, 952 A.2d 56 (2008).

1

We first address the defendants' claim that the court improperly granted the plaintiff's motion to strike the second count of their counterclaim alleging abuse of process. Specifically, the defendants argue that their abuse of process counterclaim was factually and legally sufficient. We disagree.

"An action for abuse of process lies against any person using a legal process against another in an improper manner or to accomplish a purpose for which it was not designed. . . . Because the tort arises out of the accomplishment of a result that could not be achieved by the proper and successful use of process, the Restatement Second (1977) of Torts, § 682, emphasizes that the gravamen of the action for abuse of process

---

[9] The defendants are not appealing this decision but, instead, have challenged "all of the trial court's rulings that put [the] plaintiff in the posture to be able to file its motion for summary judgment dated February 12, 2009."

is the use of a legal process . . . against another primarily to accomplish a purpose for which it is not designed . . . . Comment b to § 682 explains that the addition of primarily is meant to exclude liability when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." (Citation omitted; internal quotation marks omitted.) *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987); see *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772–73, 802 A.2d 44 (2002).

The defendants' counterclaim alleged that the plaintiff's primary purpose in the litigation was to intimidate nonparties to the litigation or to force them to pay the plaintiff money for the debt of the estate, which they are not liable for in their individual capacities. The defendants were required to plead facts sufficient to show that forcing nonparties to the litigation to pay the debt was the plaintiff's primary purpose. The counterclaim asserts multiple times that that was the plaintiff's purpose but did not plead facts sufficient to support that claim. The defendants' only support for the claim that forcing nonparties to pay the debt was the plaintiff's primary purpose is two references to the plaintiff's internal documents. The defendants allege that the plaintiff's "conscious desire is set forth in [the plaintiff's] internal documents . . . ." and the plaintiff "has expressed its conscious desire in documents . . . ." At most, these facts indicate that the plaintiff had an incidental motive, but an incidental motive is insufficient. See *Mozzochi* v. *Beck*, supra, 204 Conn. 494. The defendants failed to plead facts sufficient to show that the plaintiff's *primary* purpose in bringing the removal action was to accomplish a purpose for which it was not designed. Therefore, the court properly granted the

plaintiff's motion to strike the abuse of process counterclaim.

2

We turn next to the claim with regard to vexatious litigation. The defendants alleged that, by bringing the removal action and the breach of fiduciary duty action, the plaintiff has engaged in vexatious litigation in violation of § 52-568.[10] We disagree.

"A vexatious suit is a type of malicious prosecution action, differing principally in that it is based upon a prior civil action, whereas a malicious prosecution suit ordinarily implies a prior criminal complaint. To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, supra, 122 Conn. App. 443–44.

The defendants alleged that the motion for order in the Probate Court seeking their removal as executors of the estate, the subsequent appeal to the Superior Court and ultimately to our Supreme Court were initiated "without probable cause and with a malicious intent . . . ." In this appeal, the defendants maintain that a lack of probable cause can be inferred from the dismissal of the removal case by the Superior Court, which was affirmed by our Supreme Court. The law does not support this inference. Our Supreme Court clearly stated that "[p]robable cause may be present even where a suit lacks merit. Favorable termination

---

[10] General Statutes § 52-568 provides "[a]ny person who commences and prosecutes any civil action or complaint against another, in his own name or the name of others, or asserts a defense to any civil action or complaint commenced and prosecuted by another (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages."

of the suit often establishes lack of merit, yet the plaintiff in [a vexatious litigation suit] must *separately* show lack of probable cause. . . . The lower threshold of probable cause allows attorneys and litigants to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . . Were we to conclude . . . that a claim is unreasonable wherever the law would clearly hold for the other side, we could stifle the willingness of a lawyer to challenge established precedent in an effort to change the law." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn, LLP*, 281 Conn. 84, 103–104, 912 A.2d 1019 (2007). A lack of probable cause cannot be inferred from the dismissal of the case, and the defendants did not plead any other basis to establish a lack of probable cause.[11] Therefore, the court properly granted the plaintiff's motion to strike the defendants' vexatious litigation counterclaim.

### 3

Turning finally to the defendants' claim with regard to the alleged CUTPA violations, the defendants assert that the court erred in striking parts of the CUTPA counterclaim and allowing it to proceed only on a limited basis. The court struck the aspects of the CUTPA counterclaim sounding in abuse of process, vexatious litigation, and the breach of the covenant of good faith and fair dealing[12] but otherwise allowed the counterclaim to proceed.[13] We conclude that it was proper to

[11] While it is not clear that the removal case terminated in the defendants' favor, because the Supreme Court held that the plaintiff had a valid claim against the estate, this issue does not alter our analysis because the defendants failed to plead a sufficient basis for a lack of probable cause.

[12] The defendants do not contest the court's ruling that they could not support a CUTPA counterclaim based on a violation of the common-law covenant of good faith and fair dealing.

[13] The other bases for the CUTPA counterclaim were that the plaintiff's conduct violated established concepts of fairness and that the conduct constitutes unfair and deceptive practices and/or practices that are immoral, unethical, oppressive and/or unscrupulous.

strike the defendants' CUTPA counterclaim sounding in abuse of process and vexatious litigation. We also conclude that the court improperly denied the plaintiff's motion to strike the remaining aspects of the CUTPA counterclaim.

The following additional procedural history is relevant to the resolution of this claim. On January 8, 2008, the plaintiff filed a motion to compel the defendants to state with specificity the nature of the conduct of the plaintiff and the alleged damage, after the defendants objected to the plaintiff's interrogatories requesting such information. The interrogatories sought, in addition to other information, a detailed list of each action or inaction that was an element or part of the plaintiff's conduct that allegedly caused damage to the defendants, as claimed in the counterclaim. On March 11, 2008, the court entered an order requiring the defendants to, inter alia, "identify which pleadings and/or decisions in prior cases they are relying on in connection with their CUTPA claims . . . ."

On April 21, 2008, the defendants filed their compliance with the order. The defendants provided four incidents of conduct by the plaintiff that caused damage to the defendants as alleged in the counterclaim. The first incident was a 1997 memorandum authored by the plaintiff indicating its intent to " 'stir up commotion' " with the defendants. The second incident was a demand in 2000 by the plaintiff that the note be paid within two days, and when it was not, the plaintiff began charging the default interest rate. The third incident is a 2002 telephone message left by Daniel Cadle for David D'Addario that was insulting and claimed that David D'Addario had a personal obligation to pay the decedent's debt. The fourth incident was a 2003 telephone conversation between Daniel Cadle and David D'Addario in which Daniel Cadle threatened D'Addario with federal racketeering claims for the failure to pay the note.

At the outset we address the issue of standing.[14] CUTPA provides a cause of action to a party who suffers an "ascertainable loss" as a result of an unfair trade practice. General Statutes § 42-110g (a). "[T]he words any ascertainable loss . . . do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case." (Internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 612–13, 440 A.2d 810 (1981). "Under CUTPA there is no need to allege or prove the amount of the ascertainable loss." Id., 614. An ascertainable loss is a "deprivation, detriment [or] injury" that is "capable of being discovered, observed or established." (Internal quotation marks omitted.) Id., 613.

In determining if the defendants have suffered an ascertainable loss, we consider only alleged harm to the estate.[15] Both the counterclaim and the compliance with the court's order are replete with allegations of harm against individuals who are not parties to this litigation. Any harm or loss suffered by nonparties does not establish standing for the estate to claim a CUTPA violation. In evaluating the sufficiency of the CUTPA counterclaim, we will not consider any portions of the counterclaim alleging harm to nonparties or relating to the litigation. We also will not consider the first, third, or fourth incidents listed in the compliance with the court order to supplement the counterclaim, as those alleged incidents represent harm to either the D'Addario family generally, or to David D'Addario individually.

---

[14] While the defendants argue that the plaintiff has abandoned any argument that the defendants' counterclaims should be dismissed for lack of standing due to a failure to join necessary parties, standing is an issue that cannot be waived. See, e.g., *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 429–30, 829 A.2d 801 (2003).

[15] The defendants alleged generally in their counterclaim that the plaintiff's conduct caused the estate damage through resulting attorney's fees and costs and resulted in the inability to close the estate due to the pendency of the litigation.

Aside from the allegations of harm to nonparties and the allegations based on the litigation, the remaining factual allegations of misconduct by the plaintiff are as follows: during the litigation, the plaintiff inconsistently claimed the amount of the principal balance due on the note and the interest rate, and the plaintiff imposed the delinquency charge of 2 percent. "The ascertainable loss requirement is a [threshold] barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief." Id., 615. The statements of a party during litigation and a disagreement over the terms of the note do not cause the type of ascertainable loss required by CUTPA.

C

The defendants next claim that the court erred in denying their motion to set aside the verdict and for a new trial. They claim that the denial of their motion embraces three erroneous evidentiary rulings: (1) the exclusion of evidence relating to the three count counterclaim; (2) the exclusion of evidence relating to the purchase price of the note; and (3) the admission of evidence that the amount due on the note was greater than $1 million. We disagree.

On June 11, 2009, the defendants filed a motion to set aside the verdict and for a new trial, and for judgment in accordance with their motion for a directed verdict made during trial. The defendants argued that the verdict should be set aside because: (1) the court erroneously precluded evidence relating to the three part counterclaim; (2) the court erroneously precluded evidence of the purchase price of the note; (3) the court erroneously admitted evidence that the amount due on the note was greater than $1 million; (4) the verdict was against the evidence because the plaintiff did not prove beyond a reasonable certainty the principal

amount due on the note; and (5) the plaintiff failed to meet its burden of proof as to the reasonableness of the substitute interest rate. On November 2, 2009, the court summarily denied the motion. The defendants failed to file a motion for articulation.

Consistent with our rules of practice, it is the sole responsibility of the appellant to provide this court with an adequate record for review. Practice Book § 61-10. Practice Book § 66-5 permits an appellant to seek an articulation by the trial court of the factual and legal basis on which it rendered its decision. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005). "[W]e will, in the absence of a motion for articulation, assume that the trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). The defendants claim on appeal that they did not need to file a motion for articulation because the court's reasoning was clear from the record. We disagree. Because the defendants failed to provide an adequate record for review of their claim that the court improperly denied their motion to set aside the verdict, we need not reach the merits of this claim.

### D

The defendants' final claim is that the court improperly awarded statutory postjudgment interest under

General Statutes § 37-3a until the note is paid in full. Specifically, the defendants claim that § 37-3a is inapplicable because a postjudgment rate of interest was specified in the note. We agree.

The following additional facts and procedural history are relevant to the resolution of this claim. When the court rendered judgment in favor of the plaintiff on March 1, 2010, it awarded the plaintiff postjudgment interest in the amount of 10 percent from the date of judgment until the full amount is paid.[16] The note itself provides in relevant part for interest at the rate of the bank's prime rate plus 1.5 percent, "payable at such [r]ate until the entire principal of this Note has been fully paid, whether before or after maturity, by acceleration or otherwise, and whether or not judgment is obtained . . . ."

Before addressing the merits of the defendants' claim, we set forth the applicable standard of review and legal principles governing our analysis. Although a trial court's decision to award postjudgment interest is subject to review for an abuse of discretion; see *Bower* v. *D'Onfro*, 45 Conn. App. 543, 551, 696 A.2d 1285 (1997); the defendants' claim on appeal that § 37-3a is inapplicable is a question of law. *Sosin* v. *Sosin*, 109 Conn. App. 691, 708–709, 952 A.2d 1258 (2008), rev'd in part on other grounds, 300 Conn. 205, 14 A.3d 307 (2011). Determining whether the plaintiff is entitled to postjudgment interest at the statutory rate or the rate specified in the note requires interpretation of the unambiguous terms of the

---

[16] On June 8, 2010, the defendants filed a motion for articulation concerning the postjudgment interest award. The court denied the motion for articulation, and the defendants did not seek review of that denial. The plaintiff claims that the defendants' failure to seek review of the court's denial of the articulation motion precludes review of the postjudgment interest award. We disagree. A motion for articulation was not necessary as this claim presents a question of law. See *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 184–85, 819 A.2d 765 (2003).

contract and statutory construction, which are questions of law to which the plenary standard of review applies. *Montoya* v. *Montoya*, 280 Conn. 605, 612, 909 A.2d 947 (2006) (construction of contractual language); *State* v. *Elliott*, 127 Conn. App. 464, 477–78, 14 A.3d 439 (2011) (construction of statutory language).

At common law, a note or contract that was the subject of an action was said to merge into the judgment, such that there could no longer be an agreement concerning the judgment. See *Bowers* v. *Hammond*, 139 Mass. 360, 361, 31 N.E. 729 (1885). In Connecticut, however, legal interest on judgments is expressly provided for, and "the common-law impediment to interest on judgments does not exist . . . ." *Little* v. *United National Investors Corp.*, 160 Conn. 534, 537, 280 A.2d 890 (1971). General Statutes § 52-350f provides in relevant part that "[a] money judgment may be enforced against any property of the judgment debtor . . . to the amount of the money judgment with . . . interest as provided by chapter 673 [General Statutes § 37-1 et seq.] on the money judgment . . . ." Section 37-1 defines the legal rate of interest and provides in relevant part that "[t]he compensation for forbearance of property loaned . . . shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year . . . ." Section 37-3a governs the interest rate recoverable as damages[17] and provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. . . ."

In *Hubbard* v. *Callahan*, 42 Conn. 524 (1875), our Supreme Court interpreted a predecessor to § 37-3a.

---

[17] General Statutes § 37-3a was amended in 1987, 1992, and 2003. Those amendments, however, are not relevant to these appeals.

That statute, Public Acts 1873, c. 87, § 2, provided that "in all suits in law or equity now pending, or which may hereafter be brought, for the recovery of moneys loaned, no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due." (Internal quotation marks omitted.) Id., 537. The case in question was an action on a note, which provided for interest at the rate of 15 percent after maturity. Our Supreme Court held that the act was not intended to apply, and did not apply, to contracts in which there was an express agreement for payment of a specified lawful rate of interest after maturity. In fact, the court went on to note that if the statute did apply to contracts, where the parties had contracted for a rate, it would be unconstitutional as an unlawful impairment of the obligation of contracts. Id., 537–38.

In *Globe Investment Co.* v. *Barta*, 107 Conn. 276, 140 A. 202 (1928), our Supreme Court again interpreted the predecessor statute to § 37-3a. At that time, General Statutes § 4797 provided in relevant part that "[i]nterest at the rate of six per centum a year, and no more, may be recovered and allowed in civil actions, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable." (Internal quotation marks omitted.) Id., 278. The promissory note in dispute provided for interest at a rate of 6 percent and a postmaturity rate of 12 percent. Id., 277. The court acknowledged that the "language of this [statutory] provision would seem to justify a construction rendering it applicable to the facts of the present case" but, nevertheless, proceeded to hold that it did not apply in light of its legislative history and judicial construction. Id., 278. Relying on *Hubbard*, the court held that the statute only applied to "those cases in which the contract makes no provision as to the rate of interest after maturity and to exclude therefrom

those in which . . . a rate of interest, otherwise lawful, is prescribed as applying from and after the time when the principal becomes payable." Id., 279.

In *Little* v. *United National Investors Corp.*, supra, 160 Conn. 534, our Supreme Court interpreted General Statutes § 37-3, a more recent predecessor to § 37-3a, and substantially the same in substance as the statute in question in *Hubbard.* The note in *Little* provided that "interest shall accrue at nine (9%) per cent per annum on unpaid principal balances, before and after maturity, by acceleration or otherwise . . . ." (Internal quotation marks omitted.) Id., 542. The court awarded damages calculated at the statutory rate of 6 percent from the date of the judgment. Id., 535. Our Supreme Court held that "the statute was not intended to, and did not, apply to contracts in which there was an express agreement for the payment of a specified lawful rate of interest after maturity. . . . The statute is applicable to 'damages for the detention of money after it becomes payable' in those cases in which the contract makes no provision as to the rate of interest after maturity but is not applicable in those in which . . . a rate of interest, otherwise lawful, is prescribed as applying from and after the time when the principal becomes payable." Id., 540. The court explained that "[t]he legislative history of §§ 37-1 and 37-3, viewed in the light of the developing case law, can only lead to the unquestioned conclusion that the General Assembly by use of the phrase 'in the absence of any agreement to the contrary' in § 37-1 defining the legal rate of interest to be paid on judgments intended to and did, within the limits of the usury restrictions, allow parties to agree on the rate of interest on judgments in cases such as this." Id., 541.

One distinction exists between the notes in these cases and the note in the case at bar. Our courts have

addressed many cases where the rate the parties contracted for is higher than the statutory rate. In the present case, the contracted rate is likely lower than the statutory rate[18] and is a variable rate instead of a fixed rate. Given the unequivocal nature of the holdings of these cases, we find that the distinction is not relevant. The foregoing jurisprudence has emphasized the vitality of the doctrine of the freedom to contract, and the courts have held unequivocally that parties may contract for postmaturity and postjudgment interest.

Therefore, *Little* is applicable and binding.[19] Section 37-3a applies only where the parties have not agreed otherwise. The bank and the decedent agreed that interest would be payable at the note rate until the entire principal of the note had been fully paid. "There is nothing in the nature of the transaction, nor in the customary mode of loaning money, that makes it unreasonable or unjust to allow parties to contract for a rate of interest after maturity as well as before, but rather the contrary is true." Id. The rate of the note applies,

---

[18] While our research reveals no appellate cases applying the principles of *Little* in a case where the contracted rate was lower than the statutory rate, there are Superior Court cases reaching that holding. In *Vigneau* v. *Storch Engineers*, judicial district of Hartford, Docket No. CV-89-0700122-S (December 4, 1995) (15 Conn. L. Rptr. 623), the court had to determine the interest rate owed on the plaintiff's unpaid partnership interest following the dissolution of a partnership. The parties disagreed over whether the agreed on rate of 8 percent would apply or the 10 percent rate provided for in § 37-3a. Id., 627. The court, citing *Little*, stated that "[t]he law clearly is that when an obligation to pay money is breached, the interest rate agreed upon by the parties and not the rate provided for in §§ 37-1 and 37-3a, applies." Id. Similarly, in *People's Bank* v. *Pallman*, judicial district of Ansonia-Milford, Docket No. CV-90-033932-S (February 17, 1993), an adjustable note and mortgage provided for interest at a rate of 9.46 percent before and after default. The court, relying on *Little*, held that the note rate of 9.46 percent would apply and not the statutory rate of 10 percent under § 37-3a.

[19] We note that the plaintiff has asked this court to overrule *Little*. This court has no authority to do so. See, e.g., *Robert J. Barnabei Contracting, LLC* v. *Greater Hartford Jewish Community Center, Inc.*, 127 Conn. App. 507, 520, 14 A.3d 461 (2011).

by its terms, before or after maturity, by acceleration or otherwise, and whether or not judgment is obtained. Accordingly, we reverse the court's award of statutory postjudgment interest and remand for a calculation of postjudgment interest in accordance with the terms of the note.[20]

## II

## CROSS APPEAL

The plaintiff claims on cross appeal that the court erred when it ruled that the plaintiff was not entitled to recover the delinquency charge provided for in the contract. Specifically, it claims that the delinquency charge is a default interest rate, not an unlawful late charge as the court ruled. We agree.

Resolution of this claim requires us to interpret the language of the contract. "The standard of review for the issue of contract interpretation is well established. When . . . there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . Accordingly, our review is plenary." (Internal quotation marks omitted.) *Genua* v. *Logan*, 118 Conn. App. 270, 273, 982 A.2d 1125 (2009).

In *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, supra, 40 Conn. App. 434, this court addressed the charging of late fees. The notes in question provided that "[i]n the event of default in any monthly installment, Maker agrees to pay Holder a late charge equal to five percent (5%) of said monthly installment." (Internal quotation marks omitted.) Id., 443. The trial court

---

[20] The defendants also argue that the plaintiff is not entitled to postjudgment interest because the amount due on the note is not yet payable as otherwise required by § 37-3a. Because we find § 37-3a inapplicable, we do not reach this claim.

assessed late fees through the date of the trial, and this court reversed, holding that "a plaintiff may not recover late charges once the note has been accelerated and demand for payment has been made on the defendants." Id. The notes in question also provided for an increase in interest upon default, from 1 percent above prime to 3 percent above prime. This court held that "[i]f the late charges are allowed to continue after demand for payment in full upon default, it would, in effect, become a penalty since the plaintiff is being compensated for the default by the higher interest rate." Id., 443–44. Thus, while this court found late charges impermissible, we recognized the lawfulness of a default interest rate as a way to compensate lenders for a borrower's delinquency.

Therefore, we must determine whether the delinquency charge is a late fee, as the defendants assert, or a default interest rate, as the plaintiff claims. The note provides that when "any payment of principal or interest is not paid when due," (or, in other words, when there is default), 2 percent per annum of the unpaid principal balance will be charged "together with, in addition to" the base interest rate for the duration for the default. The note provides for interest on the unpaid balance at the rate of the bank's prime rate plus 1.5 percent. The delinquency charge is charged "together with, in addition to," that base rate. We find that the plain meaning of this term is clear. Upon default, the interest rate increases by 2 percent.

Our finding that the delinquency charge is a default interest rate is buttressed by the fact that the delinquency charge differs significantly from a traditional late fee. The delinquency charge applies for the duration of the default and is a percentage of the unpaid principal balance. Late fees are typically a one time fee of a percentage of the missed payment. See, e.g., *McKeever* v. *Fiore*, 78 Conn. App. 783, 793, 829 A.2d 846 (2003)

(note provided that in the event that any payment was not made within fifteen days after it became due, late charge of 5 percent of overdue payment would become payable); *Berkeley Federal Bank & Trust, FSB* v. *Ogalin*, 48 Conn. App. 205, 214, 708 A.2d 620 (late charge of 5 percent of any overdue payment of principal and interest), cert. denied, 244 Conn. 933, 711 A.2d 726 (1998); *Shadhali, Inc.* v. *Hintlian*, 41 Conn. App. 225, 229, 675 A.2d 3 (the note stated that "[t]he maker agrees to pay a late charge equal to five percent [5%] of any monthly installment of principal and interest not received by the holder hereof within fifteen days of the monthly installment due date" [internal quotation marks omitted]), cert. denied, 237 Conn. 926, 677 A.2d 948 (1996). While the language of the note speaks for itself, a comparison to other late fees demonstrates that the delinquency charge plainly is a default interest rate.

Finally, the penalty problem that this court sought to avoid in *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, supra, 40 Conn. App. 434, by disallowing the late charges does not exist here. Where an increase in the interest rate already applies, late charges serve as an unlawful penalty. Here, the plaintiff is only being compensated for the default by the 2 percent increase in interest rate. Accordingly, we reverse the judgment of the trial court and remand for a calculation of post-judgment interest in accordance with the terms of the note.

With respect to the defendants' appeals, the judgment is reversed in part and the case is remanded with direction to render judgment in favor of the plaintiff on the CUTPA count of the counterclaim and to award the plaintiff postjudgment interest calculated in accordance with the terms of the note. With respect to the plaintiff's cross appeal, the judgment is reversed as to the finding that the plaintiff was not entitled to the delinquency charge provided in the note and the case is remanded

with direction to award the plaintiff the delinquency charge calculated in accordance with the terms of the note. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.