## SUSAN V. HUBBARD *vs.* MARTIN CALLAHAN.

The act of 1872 provided that where there was no agreement for a different rate of interest the same should be six per cent., but that it should be lawful to contract for any rate of interest. While this act was in force the plaintiff loaned the defendant five hundred dollars and took his note for that sum payable one year from date, "with interest at the rate of fifteen per cent. after maturity." Before the note matured the act of 1873 was passed, which provided that no greater rate of interest than seven per cent. should be recovered for money loaned, for the time after the loan should have become due. Held—

1. That the fifteen per cent. was to be regarded as interest, recoverable under the contract, and not as damages or as a penalty.

2. That the act of 1873 was not intended to apply to contracts in which there was an agreement as to the rate of interest after maturity.

3. That if the act was intended to apply to such contracts, then existing, it was so far unconstitutional and void, as impairing the obligation of contracts.

[Two Judges dissenting, and holding that the amount agreed to be paid after maturity was in the nature of damages for a breach of the contract, that these damages pertained to the remedy, which is always under legislative control, and that the act of 1873 applied to the case.]

ASSUMPSIT, on the following note:

"HARTFORD, September 2d, 1872.

"One year after date I promise to pay to the order of Susan V. Hubbard, five hundred dollars, at the Hartford Trust Company, value received, with taxes, and interest at the rate of fifteen per cent. after maturity.        MARTIN CALLAHAN."

The suit was brought to the City Court of the city of Hartford and tried on the general issue before *Sumner, J.*

It was admitted that none of the principal of the note and no interest thereon had been paid, and the only question between the parties was, whether the note should draw interest after maturity according to its tenor, at the rate of fifteen per cent., or at the rate of seven per cent.

The court made a finding of the facts and rendered judgment for the plaintiff to recover at the rate of seven per cent. The plaintiff brought the record before this court by a motion in error.

The statute of 1872, in force when the contract was made, provided that it should be "lawful to contract for payment or receipt of any rate of interest," with a provision that only six per cent. should be recovered unless the agreement to pay the greater rate should be in writing. The act of 1873 provided that "no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due."

*R. S. Welles,* for the plaintiff.

1.  The agreement for interest after maturity in the present case, was a "contract for a rate of interest" within the meaning of the act of 1872. *Beckwith* v. *Hartford, Prov. & Fishkill R. R. Co.,* 29 Conn., 268; *Adams* v. *Way,* 33 id., 419, 431; *Rose* v. *Phillips,* id., 570, 576; Story Confl. Laws, § 296; 3 Parsons on Cont., 104; *Curtis* v. *Innerarity,* 6 How., 154; *Brewster* v. *Wakefield,* 22 id., 118, 127; *Daggett* v. *Pratt,* 15 Mass., 177; *Ayer* v. *Tilden,* 15 Gray, 184; *Wernwag* v. *Mothershead,* 3 Blackf., 401; *Kilgore* v. *Powers,* 5 id., 22; *Billingsly* v. *Cahoon,* 7 Ind., 184; *Parvin* v. *Hoopes,* 1 Morris, 294; *Wilkinson* v. *Daniels,* 1 Iowa, 188; *Richards* v.

Hubbard *v.* Callahan.

*Marshman,* 2 id., 217; *Wiswell* v. *Baxter,* 20 Wis., 680; *Weems* v. *Ventress,* 14 Louis. An., 267; *Letchford* v. *Starns,* 16 id., 252; *Kohler* v. *Smith,* 2 Cal., 597; *Prigden* v. *Andrew,* 7 Texas, 461; *Hopkins* v. *Crittenden,* 10 id., 189; *Chinn* v. *Hamilton,* Hempst. C. C., 438; *Keene* v. *Keene,* 3 Com. Bench, 144; *Gibbs* v. *Fremont,* 9 Exch., 25. Whether the interest provided for is to be regarded as a penalty depends upon the intention of the parties as gathered from the instrument itself. *Dakin* v. *Williams,* 17 Wend., 447, 454.

2. The validity of the contract can not be impaired in respect of any of its terms, by the act of 1873. Const. of U. States, art. 1, sec. 10; *Barlow* v. *Gregory,* 31 Conn., 261, 265; *Ogden* v. *Saunders,* 12 Wheat., 213, 261; *Bronson* v. *Kinzie,* 1 How., 311, 316; *Ohio Life & Trust Co.* v. *Debolt,* 16 id., 432; *Gelpcke* v. *City of Dubuque,* 1 Wall., 206; *Van Hoffman* v. *City of Quincy,* 4 id., 553; *Walker* v. *Whitehead,* 16 id., 314, 317.

*H. C. Robinson* and *McCloud,* for the defendant.

1. The interest provided for by the contract after maturity was intended merely as damages or a penalty for breach of the contract. *Henry* v. *Thompson,* 1 Ala., 209; *Gray* v. *Crosby,* 18 Johns., 219, 226; *Orr* v. *Churchill,* 1 H. Bla., 232; Sedgw. on Dam., 420; *Brewster* v. *Wakefield,* 22 How., 118.

2. But whatever were the intentions of the parties, the act of 1873 controlled the matter of the damages to be recovered. These damages pertain merely to the remedy, and that is always subject to the control of the legislature. Such legislation, though retrospective, is yet held to be valid, where its object is "to remedy a mischief and promote justice." *Goshen* v. *Stonington,* 4 Conn., 221; *Welch* v. *Wadsworth,* 30 id., 155; *Guild* v. *Rogers,* 8 Barb., 502; *Van Rensselaer* v. *Sugden,* 13 N. York, 299; *Conkey* v. *Hart,* 14 id., 22; *Walter* v. *Penry,* 2 Verm., 145.

LOOMIS, J. The act of July 2d, 1872, provides that, "where there is no agreement for a different rate of interest,"

the same shall be six per cent., and that "it shall be lawful to contract for the payment and receipt of any rate of interest." Public Acts 1872, chap. 16, p. 10.

While this act was in full force the plaintiff loaned the defendant five hundred dollars, and took his promissory note for that sum, dated September 2d, 1872, payable one year after date, "with taxes, and interest at the rate of fifteen per cent. after maturity." And the question is, whether this was a "contract for the payment and receipt of any rate of interest" within the meaning of the statute.

It is evident that the parties contemplated that the defendant would probably want to keep the money loaned after the expiration of the year, and therefore agreed specifically upon a rate of interest after maturity, and also for the payment of the taxes on the money after that time. It seems too clear for doubt that the minds of the parties met, and that they agreed on a rate of interest after maturity, and that it is a valid contract, so far as the mutual act and intent of the parties could give it validity. Is there any rule of law which defeats the intention of the parties or puts them under a disability to contract in this matter? And here we meet the precise legal question in this case:—May there be a valid contract for interest after the time of the maturity of a note until payment?

Why not? If we may take the language of the statute in its common acceptation, no one would entertain a doubt that the parties could contract for a rate of interest after the money is due and while it remains unpaid, as well as before. There is no exception, qualification or limitation in the statute. If no rate of interest is specified, six per cent. is the legal rate; but if the parties agree upon the rate in writing, then the agreed rate becomes the legal rate in that case.

There is nothing in the nature of the transaction, nor in the customary mode of loaning money, that makes it unreasonable or unjust to allow parties to contract for a rate of interest after maturity as well as before, but rather the contrary is true.

With the exception of loans made by regular banks of dis-

count, it is quite common for the parties to specify an earlier day than is really intended for payment. The immense sums of money loaned by the savings banks, insurance companies, and the school fund of this state, are all evidenced by notes, bonds or other instruments on demand, or on very short time, and yet these are called permanent loans. It would strike most commercial and business men with surprise, if they were told that all that is received or paid for the use of the money so loaned was not interest, but mere damages for the breach of contract, and that the parties could not, if they would, make it interest, even by an express agreement to that effect.

If then there is any limitation of the power of parties to contract in this regard, it must be found in some extremely technical definition of the word "interest" as used in the statute. And the defendant's claim is that the word "interest" in law necessarily imports a compensation for the use of money until the principal is due. This claim however is not well sustained by authorities.

Bouvier, in his Law Dictionary, says, "Interest is the compensation which is paid by the borrower of money to the lender for its use, and generally, by a debtor to his creditor in recompense for his detention of the debt." Webster's Dictionary defines it: "Premium paid for the use of money; the profit per cent. derived from money lent, or property used by another person, or from debts remaining unpaid."

The term "interest," as used in the statute, should be construed with reference to the fact that the legislature, in the act referred to, were not dealing specially with promissory notes having a fixed time to run and a definite obligation to pay at maturity; but on the contrary they had in view all sorts of debts, accounts, obligations and contracts, whether verbal or written, whereon interest might be computed, allowed, or reserved. Of course the word "interest" when used in the statute with reference to the "legal rate," in the absence of an agreement, means just the same as when it is used in connection with an "agreed rate."

Instead of its being true that the word "interest" has such a restricted signification that it must cease to be interest when

the principal debt becomes due, there are, on the contrary, many cases where it has been decided that interest commences only when the debt becomes due and payable.

In *Selleck* v. *French*, 1 Conn., 32, a leading case on the subject of interest, Judge SWIFT, in giving the opinion, specifies nine classes of cases where interest will be allowed by law, and among them are the following:

"Where goods are sold and delivered to be paid for on a day certain, and are charged on book, interest will be allowed after the time of credit has expired."

"Where one has received money for the use of another, and it was his duty to pay it over, interest is recoverable for the time of the delay."

"Where an account has been liquidated, and the balance ascertained by the parties, interest will be allowed thereon."

So "interest may be recovered upon the arrears of interest due, if there is an express promise to pay such interest. *Rose* v. *Bridgeport*, 17 Conn., 243, and cases cited by Judge CHURCH, in the opinion, p. 247.

In these cases it is called interest and not damages. But there are cases where interest is allowed " by way of," or " in the nature of" damages.

In *Selleck* v. *French*, Judge SWIFT says: " Interest by our law is allowed on the ground of some contract, express or implied, to pay it, or as damages for the breach of some contract or the violation of some duty." He then proceeds to give a summary of the law on this subject in nine distinct propositions, the first and third of. which are as follows:

" 1.    Interest will be allowed *in all cases* where there is an *express contract* to pay it."

" 3.    Where there is a written contract to pay money or other thing on a day certain, and the contract is broken, then interest is allowed by way of damages for the breach, as in the case of notes and bills of exchange."

It is obvious that this last proposition refers to cases where the written contract is silent as to interest after maturity, for it had just been stated without qualification that interest is.

allowed in *all cases of express contracts to pay it.* In no other way can the two propositions stand together.

This rule of allowing interest as damages originated in the desire of the courts to adhere to certain technical rules, and at the same time do justice to the parties. Interest could only be allowed on the ground of an express or an implied contract to pay it. In case therefore of an express written contract covering the subject matter, but which was silent as to interest, the express contract could not be enlarged by adding a promise to pay interest, and there was no ground or right to imply such a promise. But as it was extremely unjust to allow the defendant to have the use of the money loaned without compensation, interest was allowed, in the nature of damages, for the detention of the money.

But it is a perversion or misapplication of this principle to apply it to an express written promise to pay interest after maturity. If there is any distinction which can be established by legal authorities it is the one upon which we base our decision in this case, that where, in a bill or note, interest after maturity is expressly reserved, it is treated as interest *eo nomine*, and never as damages.

In Byles on Bills, 4th Am. and 6th London Ed., side page 240, it is said: "Interest where *not made payable on the face of the instrument*, is in the nature of damages for the retention of the principal." And in a note it is added: "But in an action of debt, if the interest be payable by the terms of the instrument, it is recoverable not as damages but as a debt." Referring to *Watkins* v. *Morgan*, 6 Car. & Paine, 661; *Hudson* v. *Tossell*, 13 Law Journal, 141, and other cases.

This distinction would seem to be well settled in England, and it is very clearly exhibited in a recent case, decided in 1874, in the House of Lords, (*Cook* v. *Fowler*, Law Reports, 7 H. L. Cas., 27,) which was a suit brought on a warrant of attorney given to secure the payment of £1,330, "on the 2d of June next," with interest at five per cent. per month, "judgment to be entered up forthwith."

The Lord Chancellor (Lord Cairns) says of this warrant of attorney, that it was given to secure a debt of £1,330,

with interest up to a certain day, and without any mention of subsequent interest upon the face of the instrument, plainly implying that if there had been any mention of subsequent interest it would govern. He says further: "No doubt, primâ facie, the rate of interest stipulated _or up to the time certain might be taken, and generally would be taken, as the measure of interest, but this would not be conclusive. It would be for the tribunal to look at all the circumstances of the case, and to decide what was the proper sum to be awarded by way of damages." The House of Lords declined to award damages at the rate of sixty per cent., because under the circumstances it was highly inequitable. Lord Chelmsford, in the same case, alluding to the argument of counsel that interest was to be implied after maturity at the same rate as stipulated for up to that day, said: "On the contrary, the distinction seems to be well established between cases where the *interest is expressly reserved in the instrument*, and *where it is not*. In the latter case it is recoverable, not as interest *according to the contract*, but as damages for the breach of it." Lord Hatherley said: "The question resolves itself simply into this: Is there, or is there not, *any contract after the day* upon which judgment was to be entered up for the payment of any specific sum and interest." Lord Selborne said: "Unless it can be laid down as a general rule of law, that upon a contract for the payment of money borrowed for a fixed period, on a day certain, with interest at a certain rate down to that day, a further contract for the continuance of the same rate of interest after that day, until actual payment, is to be implied, the decision of the Vice Chancellor in this case is not erroneous. I entirely agree with those of your lordships who have preceded me, that no such contract is to be implied, unless there is something to justify it upon the construction of the words of the particular instrument."

In *Florence* v. *Jennings*, 2 Com. Bench. N. S., 454, the plaintiff discounted for the defendant a bill for £250, drawn by the latter upon one *A*, and at the same time the defendant and *A* signed the following memorandum, addressed to the plaintiff:—"Sir: In consideration of your discounting the

under-mentioned bill, we do hereby jointly and severally undertake, if the same is not wholly paid at maturity, to pay as interest thereon £20 for each month which shall have elapsed after maturity of the said bill, and until the same is wholly paid and satisfied." At the foot of this memorandum was written "£250, Jennings on A at three months." In an action brought upon this collateral agreement, this high rate of interest, equal to ninety-six per cent., was recovered from the maturity of the bill, Cockburn, C. J., delivering the opinion. This was about the year 1857, when the statute in England made five per cent. the legal rate to be recovered, "unless it should appear to the court that a different rate of interest was agreed between the parties;" a statute similar in substance to our act of 1872.

The views we entertain will also be found to accord with nearly all the decisions in this country, both in the state courts and in the courts of the United States. A few of these we will cite.

In *Wilkerson* v. *Daniels*, 1 Greene, (Iowa,) 179, under a statute of that state authorizing parties to contract for interest not exceeding twenty per cent. per annum, a note was made "with twelve per cent. interest, and if not paid to the day fifteen per cent. from date." The case was tried in a court of equity. Hastings, C. J., in giving the opinion said: "The statute in force at the date of the execution of the note regulating interest, permitted parties to contract for the payment of interest at the rate of twenty per centum per annum. The makers of this note agreed to pay twelve per centum from date, and if not paid to the day, fifteen per cent. This cannot be construed as a penalty against which a court of equity will afford relief. It is a contract to pay fifteen per cent. interest per annum on a contingency, which we think the law then permitted."

In *Gray* v. *Briscoe*, 6 Bush, (Ky.,) 687, which was an action on a note payable one day after date "with ten per cent. interest from date," it was argued in behalf of the defendant that the contract imported only an agreement to pay interest at that rate for one day, and that after the maturity of the debt

it bore only the legal rate." But the court, while recognizing the rule of *Brewster* v. *Wakefield*, 22 How., 118, as correct "in cases where it appears that the parties meant to fix the rate of interest with reference to the time of maturity, and not of payment," say that "the case must be controlled by the intrinsic evidence which the contract itself furnishes of the intention of the parties. The amount of interest secured by the contract in excess of the rate of six per cent. per annum for a single day is so inconsiderable that it is scarcely reasonable to suppose the parties intended to restrict the stip-ulated rate of interest to the maturity of the contract, but we must conclude that they intended it to continue until the debt should be paid."

In *Wernwag* v. *Mothershead*, 3 Blackf., (Ind.,) 401, the note was as follows: "Eight weeks from date we will pay Mothershead and Foster four hundred and thirty-two dollars, and if not paid when due we will pay five dollars interest per week until paid." The court held that this note, on default of payment when due, drew interest at the rate specified in the note from the time it became due. To the same effect also are the cases of *Billingsly* v. *Cahoon*, 7 Ind., 184, and *Kilgore* v. *Powers*, 5 Blackf., 22.

In *Parvin* v. *Hoopes*, Morris, (Iowa,) 294, the note read, "with ten per cent. interest if not paid when due," and the court allowed interest at that rate to the date of the judgment.

In *Weems* v. *Ventress*, 14 Louis. Ann., 267, the notes read, "with interest from and after maturity at the rate of eight per cent. per annum, until paid," and the court held that by contract as well as by law the interest began to run from the day of payment without allowing for days of grace. And this decision was re-affirmed in *Letchford* v. *Starns*, 16 Louis. Ann., 252.

In *Wiswell* v. *Baxter*, 20 Wis., 680, the note was payable on a day certain "with interest at thirty per cent. per annum until paid," and the court allowed interest at that rate to the date of the decree.

In *Pitzer* v. *Barrett*, 34 Miss., 84, the note was payable September 1st, 1858, "with interest thereon till paid," and

interest was allowed from date on the ground of contract. See also *Prigden* v. *Andrews*, 7 Tex., 461; *Hopkins* v. *Crittenden*, 10 Tex., 189; *Kohler* v. *Smith*, 2 Cal., 597.

In *Daggett* v. *Pratt*, 15 Mass., 177, action was brought upon four promissory notes, payable at distant days; three of them " with interest at three per cent. per annum, if paid at their maturity, if not, six per cent. interest to be paid "; and the fourth was payable without interest " until the note is out, if not paid then, lawful interest until paid." The notes not having been paid when due, judgment was rendered upon them all with interest at six per cent. from the date of the notes to the rendition of final judgment. The error assigned was the amount of damages. The plaintiff in error claimed that the true construction of the promise was that interest was to be allowed at six per cent. until maturity. But the court were of a different opinion, and affirmed the judgment. This case was decided as early as 1818, but the courts of Massachusetts still adhere to the principle of that case.

In the recent case of *Brannon* v. *Hursell*, 112 Mass., 63, decided in 1873, an action was brought on a promissory note for $1,500, dated March 14th, 1870, payable four months after date with interest at ten per cent. The court below allowed interest at that rate to the time of verdict. The defendant took exceptions, and the Supreme Court overruled them. Morton, J., in giving the opinion says: " The rate of interest specified in the note is ten per cent., and the plaintiff claims interest at that rate since the maturity of the note. We are of opinion that he is entitled to receive it. The legal rate of interest is six per cent. in the absence of any agreement for a different rate; but it is lawful for the parties to contract to pay and receive a different rate; and where the agreement to pay a greater rate is in writing it can be recovered by action. Statutes 1867, chap. 56. In the case at bar, the defendants have agreed in writing that the rate of interest for the use of the plaintiff's money shall be ten per cent. The plaintiff recovers interest both before and after the note matures, by virtue of the contract, as an

incident or part of the debt, and is entitled to the rate fixed by the contract." To the same effect is the recent case of *Mounett* v. *Sturges*, 25 Ohio S. R. (not yet published.)

Opposed to these numerous and repeated decisions only one authority has been found sustaining at all the position of the defendant. We refer to *Henry & Winston* v. *Thompson*, and other cases considered at the same time, reported in 1 Alabama R., 209. And the force of this authority will be much impaired by a careful examination of the case and the peculiar grounds on which the decision is placed by some of the judges. There were a large number of notes differing in their terms, no particular description of which is found in the report; but they are reduced to four general classes in the briefs of counsel :—" 1st. To pay the principal at a future day, and if not punctually paid, to pay the premium or interest as at the rate expressed from the date. 2d. To pay the principal at a future day with interest at the rate expressed from the date till paid. 3d. To pay the principal at a future day with a distinct agreement to pay the interest, not stating the time from which or till which it was to run. 4th. To pay the principal at a future day, with interest from the maturity of the note." The rates of interest stipulated for were in some cases one hundred and twenty per cent. per annum; in others sixty per cent; and the very lowest was thirty per cent. The statute of that state then in force provided " that any rate of interest or premium for the loan or use of money, wares, merchandise or other commodity, fairly and bonâ fide stipulated and agreed upon by the parties to such contract, expressed in writing and signed by the party to be charged therewith, shall be legal." A majority of the judges concurred in refusing to allow the stipulated rates of interest, but they did not agree as to the grounds of the decision. Judges Crenshaw and Minor delivered very able dissenting opinions sustaining the stipulations for interest as valid contracts. The majority opinions were given by the Chief Justice, and by Judge Safford. Judges Ellis and Gayle concurred with the Chief Justice in the opinion that the statute required

that the contract on its face should show that the considera-
tion was a loan.   One reason· for giving such a literal appli-
cation of the statute is stated to be the unparalleled rate of
interest.   But in the course of the opinion the Chief Justice
says : "As to the second, third, and fourth classes of cases,
as arranged in the brief and arguments of counsel, I am of
opinion that if the consideration had been a fair and bonâ
fide loan, the parties had a right to stipulate any rate of
interest, without limiting it to a future day or to the maturity
of the note, provided the contract as to interest be absolute
and unconditional."   Judge Safford held, (in which Gayle, J.,
also concurred,) " that where the rates of interest were ex-
orbitant, and there was no time of forbearance fixed by the
contracts, they were not within the statute "; and this opinion
also comments on " the enormity of the rate as inducing a
presumption of unfairness, and as exceeding any rational
estimate of a fair equivalent for the use of money, and
greatly beyond any rate ever sanctioned by the principles of
the common law."   It seems quite obvious that the enormity
of the rates of interest specified in these notes controlled
the decision and induced the court to construe the stipulations
for interest as a penalty, or as not within the literal meaning
of the statute.

If, in the case now under consideration, the rate of interest
was as high as one hundred and twenty per cent., and if the
form of the note was like some of the notes in the case last
cited, which specified a day for the payment of the principal,
and then provided, " if not paid punctually at the day,"
then to pay this high rate of interest from date, it might
possibly justify the court in holding that what the parties
called interest, they meant simply for a penalty.   But the
contract we are called upon to construe specifies a rate of
interest not much, if any, above what has often, during periods
of monetary stringency, been considered a fair equivalent for
the use of money at the place where this contract was to be
performed.

The precise question we are considering has never been
before this court in any previous case ; but decisions have

been made looking we think toward the result reached by the majority in this case. See *Rose* v. *Phillips*, 33 Conn., 570, and the cases hereafter mentioned.

Where the contract specifies a rate higher than the legal rate up to the time of maturity, but is silent as to the rate to be charged after maturity until payment, there have been diverse decisions in different states; some holding that the rate fixed by the terms of the contract shall govern for the time after the breach, and others that the rate fixed by law shall then prevail.

Our Supreme Court, in the cases of *Beckwith* v. *Hartford, Prov. & Fishkill R. R. Co.*, 29 Conn., 419, and *Adams* v. *Way*, 33 Conn., 419, has taken position firmly with the former class. It is true that it is held that the plaintiffs in these cases were entitled to interest as damages, estimated by the contract before maturity and not by the legal rate; but if the court could give such effect to an agreed rate, referring only to the time prior to maturity, as to supersede the legal rate after maturity, it would seem quite natural, if not inevitable, that the same court would sanction an express contract to pay an agreed rate after maturity, when the statute at the time allowed parties to contract for any rate without any qualification or exception.

We are reminded that when the decisions just referred to were made by this court the legislature had not attempted by any special act to control the rate of interest or damages after maturity. But on the 11th of July, 1873, an act was passed which provided " that in all suits in law or equity now pending, or which may hereafter be brought, for the recovery of moneys loaned, no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due." How then does this statute affect the question we are considering?

Our reasoning has already conducted us to the definite conclusion that the contract in the case at bar was, when made, a valid contract for interest after maturity of the note. If then, the act just cited must be construed as applying to such contracts, then, so far, we must hold it null and void,

as being within the provisions of section 10, of article 1, of the constitution of the United States, which prohibits a state from passing any "law impairing the obligation of contracts." But we are reluctant to declare any act of the legislature utterly futile and nugatory; and upon careful examination of this act we do not think it is necessary to hold that it was intended to affect existing contracts for interest after maturity, but that the object was to prevent the operation of the rule established by this court in the cases last cited, that the rate of interest agreed upon before maturity should govern the rate to be allowed as damages after maturity where the contract was silent as to the rate after maturity. This construction will seem the more reasonable if we would harmonize the act in question with that of July 1st, 1873, which made seven per cent. the legal rate, but expressly provided that the act should not affect existing contracts. It is hardly supposable that the legislature on the 1st of July intended to save all existing contracts, and that on the 11th of the same month they intended to destroy them. And as further evidence of the intention of the act we find that the legislature at its next session adopted the "Revision of the Statutes" to take effect January 1st, 1875, and that in such revision the operation of the statute in question was confined to "*damages* for the detention of money after it becomes ·payable;" adopting almost the identical phrase used in the cases cited. Gen. Statutes, Revision of 1875, p. 351, sec. 2.

This act thus construed has still a large field for its operation, though it is restrained to those cases where the instrument in which the parties have. embodied their contract is silent as to the rate of interest after maturity, for such contracts are by far the most numerous.

There is manifest error in the judgment complained of, and it is reversed and the cause remanded.

In this opinion FOSTER and PARDEE, Js., concurred.

CARPENTER, J., (dissenting.) I cannot concur in the result

to which a majority of the court have come.   The note fell
due September 2d, 1873.   After that day the defendant did
not hold the money under and by virtue of his contract, but
rather in violation of his contract.   Compensation for the
use of money so detained is not, in any proper sense, interest.
Although it is called interest in the note, and in the statute
hereinafter quoted, yet that does not change its nature.   The
word is used in a loose and popular sense.   By whatever
name it may be called, it is in substance damages for a
breach of the contract.   *Fisher* v. *Bidwell*, 27 Conn., 363.
The agreement in the body of the note, " and interest at the
rate of fifteen per cent. after maturity," is nothing less than
an attempt.to fix the amount of such damages.   That agree-
ment could have no effect until on and after September 2d,
1873.   The statute which was then in force, (approved July
11th, 1873,) declares that " no greater rate of interest than
seven per cent. per annum shall be recovered or allowed for
the time after the money loaned becomes due."   The agree-
ment and the statute palpably conflict, and one or the other
must give way.   As the agreement relates to the penalty for
a violation of the contract, which pertains to the remedy and
is always subject to legislative control, I think the statute
and not the agreement, should prevail.

In this opinion PARK, C. J., concurred.