SIKORSKY FINANCIAL CREDIT UNION, INC.
*v.* WILLIAM D. BUTTS
(AC 34669)

Robinson, Alvord and Peters, Js.

Argued March 12—officially released August 6, 2013

*William L. Marohn,* for the appellant (plaintiff).

*Opinion*

PER CURIAM. Pursuant to the terms of a retail instalment contract for the purchase of an automobile, the defendant agreed that, in the event of his default, he would be liable for postmaturity interest on the deficiency balance. The issue in this case is whether this provision determined the rate of interest for postjudgment interest. The plaintiff appeals from the judgment of the trial court concluding that postjudgment interest was governed by General Statutes § 37-3a[1] rather than

---

[1] General Statutes § 37-3a provides: "(a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable. Judgment may be given for the recovery of taxes assessed and paid upon the loan, and the insurance upon the estate mortgaged to secure the loan, whenever the borrower has agreed in writing to pay such taxes or insurance or both. Whenever the maker of any contract is a resident of another state

by the contract. We affirm the judgment of the trial court.

In a complaint filed on July 12, 2011, the plaintiff, Sikorsky Financial Credit Union, Inc., alleged that the defendant, William D. Butts, had defaulted on the terms of a retail instalment contract securing a loan of $24,740.42. The plaintiff further alleged that the defendant had promised to make payments in accordance with this contract, and that, pursuant to the contract, the defendant had granted the plaintiff a security interest in his 2005 Mitsubishi Lancer. When the defendant subsequently defaulted on the terms of the retail instalment contract, the plaintiff took possession of the collateral and sold it at a public auction. The proceeds of the sale netted $13,200. The plaintiff alleged that pursuant to General Statutes § 36a-785 (g),[2] the fair

or the mortgage security is located in another state, any obligee or holder of such contract, residing in this state, may lawfully recover any agreed rate of interest or damages on such contract until it is fully performed, not exceeding the legal rate of interest in the state where such contract purports to have been made or such mortgage security is located.

"(b) In the case of a debt arising out of services provided at a hospital, prejudgment and postjudgment interest shall be no more than five per cent per year. The awarding of interest in such cases is discretionary."

[2] General Statutes § 36a-785 (g) provides in relevant part: "If the goods retaken consist of a motor vehicle the aggregate cash price of which was more than two thousand dollars, the prima facie fair market value of such motor vehicle shall be calculated by adding together the average trade-in value for that motor vehicle and the average retail value for that motor vehicle and dividing that sum by two. Such average trade-in value and average retail value shall be determined by the values as stated in the National Automobile Dealers Association Used Car Guide, Eastern Edition, as of the date of repossession. . . . In the event that the value of such motor vehicle . . . is not stated in such publication, then the fair market value at retail minus the reasonable costs of resale shall be determined by the court. The prima facie evidence of fair market value of such motor vehicle . . . so determined may be rebutted only by direct in-court testimony. If such value of the motor vehicle . . . is less than the balance due under the contract, plus the actual and reasonable expenses of the retaking of possession, the holder of the contract may recover from the retail buyer, or from anyone who has succeeded to his obligations, as a deficiency, the amount by which such liability exceeds such fair market value, as defined

market value of the collateral was $17,250, leaving a deficiency after crediting the defendant $5673.58 for credits due. After the defendant failed to pay the amount of this deficiency, the plaintiff filed suit for a deficiency judgment plus interest, reasonable attorney's fees and costs of suit. The defendant failed to appear, and a default judgment was entered against him.

A hearing in damages was held before the court on April 16, 2012. The court awarded the plaintiff damages totaling $7501, which included the difference between the sale proceeds and the fair market value of the collateral, attorney's fees, and prejudgment interest at the contractual rate of 9.14 percent. Exercising its discretion pursuant to § 37-3a, the court also awarded the plaintiff postjudgment interest at the rate of 2 percent.

On April 24, 2012, the plaintiff moved for reargument and reconsideration on the issue of the applicable rate of postjudgment interest. The court granted the motion but declined to alter its judgment, stating that "[t]here is nothing in the agreement between the parties governing postjudgment interest. Postjudgment interest is discretionary with this court . . . ." The plaintiff subsequently sought articulation of the court's judgment with respect to that portion of its judgment granting postjudgment interest at the rate of 2 percent. Granting the motion for articulation, the court stated that it had awarded postjudgment interest at a rate of 2 percent pursuant to its statutory authority under § 37-3a. It explained that its award of postjudgment interest was not an award of interest to be calculated under the contractual provision for "eo nomine interest" because in its view that postmaturity interest qualified as prejudgment interest.

in this subsection. If the actual resale price received by the holder exceeds such fair market value, as defined in this subsection, the actual resale price shall govern."

On appeal, the plaintiff claims that the trial court improperly granted discretionary postjudgment interest at a rate of 2 percent pursuant to § 37-3a. The plaintiff argues that the court was required to grant postjudgment interest at the alleged contractually stipulated rate of 9.14 percent pursuant to General Statutes § 37-1,[3] or, in the alternative, at the legal rate under that statute. We affirm the judgment of the court.

We first set forth the standard of review that governs our analysis. "Although a trial court's decision to award postjudgment interest is subject to review for an abuse of discretion; see *Bower* v. *D'Onfro*, 45 Conn. App. 543, 551, 696 A.2d 1285 (1997); the [plaintiff's] claim on appeal that § 37-3a is inapplicable is a question of law." *Cadle Co.* v. *D'Addario*, 131 Conn. App. 223, 243, 26 A.3d 682 (2011). Determining whether the plaintiff is entitled to postjudgment interest at the statutory rate or at the rate specified in the contract requires interpretation of the unambiguous terms of the contract and of the applicable statute; these are questions of law to which the plenary standard of review applies. See id., 243–44.

The plaintiff claims that it was entitled to postjudgment interest at the contractual rate of 9.14 percent pursuant to § 37-1 because the defendant agreed to pay this rate. According to the plaintiff, the court, therefore, improperly awarded interest under § 37-3a. Our Supreme Court has held that General Statutes § 37-3, a more recent predecessor to § 37-3a, and substantially the same in substance, "was not intended to, and did

---

[3] General Statutes § 37-1 provides: "(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year; and, in computing interest, three hundred and sixty days may be considered to be a year.

"(b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt."

not, apply to contracts in which there was an *express* agreement for the payment of a specified lawful rate of interest after maturity. . . . The statute is applicable to damages for the detention of money after it becomes payable in those cases in which the contract makes no provision as to the rate of interest after maturity but is not applicable in those in which . . . a rate of interest, otherwise lawful, is prescribed as applying from and after the time when the principal becomes payable. . . . The court explained that [t]he legislative history of [§] 37-1 . . . viewed in the light of the developing case law, [could] only lead to the unquestioned conclusion that the General Assembly by use of the phrase in the absence of any agreement to the contrary in § 37-1 defining the legal rate of interest to be paid on judgments intended to and did, within the limits of the usury restrictions, allow parties to agree on the rate of interest on judgments . . . ." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 246, citing *Little* v. *United National Investors Corp.*, 160 Conn. 534, 534–41, 280 A.2d 890 (1971).

In this case, the contract between the parties provides for an "annual percentage rate ([t]he cost of your credit as a yearly rate)" of 9.14 percent. In its grant of prejudgment interest, the court awarded interest pursuant to § 37-1 at the rate of 9.14 percent, as contemplated under the contract. The contract does not, however, explicitly address postjudgment interest. Accordingly, it was reasonable for the court to conclude that the rate of 9.14 percent applied only to prejudgment interest.

The contract also states, in a separate section describing the consequences of a default in payment by the defendant, that the vehicle would be repossessed and that "[i]f the amount we apply [from the sale of the vehicle] (less allowed expenses) is not enough to pay all you owe, you must pay the rest to us, unless the law provides otherwise. If you do not pay this amount

when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay." Nowhere in this section or elsewhere in the contract do the parties specify whether the "until you pay" language of the contract refers to interest to be accrued before or after a final judgment had been rendered against the defendant. In the absence of such a contractual provision for the rate of interest to accrue *postjudgment*, we are not persuaded by the plaintiff's claim that it is entitled to postjudgment interest at a rate of 9.14 percent.

The plaintiff alternatively argues that, even if the rate of 9.14 percent applies only to prejudgment interest, it is still entitled to postjudgment interest at the legal rate of 8 percent pursuant to § 37-1. "[I]f contracting parties agree to or contemplate interest but fail to set a rate of interest, § 37-1 (a) provides that interest will accrue at the legal rate of 8 percent up to the date of maturity, and § 37-1 (b) provides that interest will continue to accrue at the legal rate of 8 percent from the date of maturity." *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, 304 Conn. 348, 382, 39 A.3d 1075 (2012). As we noted, however, the court properly determined that the "postmaturity" interest to be accrued under the contract should be characterized as *prejudgment* interest. Because the award of prejudgment interest included postmaturity interest at the contractual rate of 9.14 percent, we are, therefore, not persuaded that the plaintiff was entitled to additional postmaturity interest at the legal rate of 8 percent.

Furthermore, in its order awarding damages to the plaintiff, the court, in its calculation of the deficiency judgment and interest, relied on evidence submitted by the plaintiff, including a statement of debt, affidavits and a calculation of interest. In the plaintiff's calculation, it did not claim postjudgment interest, but claimed *prejudgment* interest at 9.14 percent in accordance with

§ 37-1, totaling $600.96, which sum is the exact amount the court granted to the plaintiff in prejudgment interest. It is thus apparent that the plaintiff characterized the postmaturity or "eo nomine" interest to which it was entitled as "prejudgment interest." Indeed, the plaintiff did not allege that it was owed postjudgment interest at the same rate until it filed its motion for reargument. This court has stated that "[a] motion to reargue . . . is not to be used as an opportunity to have a second bite of the apple or to present additional cases or briefs which could have been presented at the time of the original argument." (Internal quotation marks omitted.) *Opoku* v. *Grant*, 63 Conn. App. 686, 692–93, 778 A.2d 981 (2001). Because the plaintiff failed to claim contractual postjudgment interest in bringing its action or at the hearing in damages, it cannot fault the court's consideration of the merits of its claim.

Having decided that it could properly consider the issue of postjudgment interest under § 37-3a, and not § 37-1, the court properly exercised its discretion to grant postjudgment interest at the rate of 2 percent pursuant to that statute. "A decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . The court's determination regarding the award of interest should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Citations omitted; internal quotation marks omitted.) *Bower* v. *D'Onfro*, supra, 45 Conn. App. 550–51; see also *Discover Bank* v. *Mayer*, 127 Conn. App. 813, 818, 17 A.3d

80 (2011). Here, the court, weighing equitable considerations, determined that postjudgment interest was due at the rate of 2 percent. The plaintiff has advanced no reasonable ground for us to find an abuse of discretion in that determination. See *Bower* v. *D'Onfro*, supra, 551.

The judgment is affirmed.