******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SIKORSKY FINANCIAL CREDIT UNION,
INC. *v.* WILLIAM D. BUTTS
(SC 19216)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Keller, Js.*

*Argued September 23, 2014—officially released February 3, 2015*

*William L. Marohn*, for the appellant (plaintiff).

*Joanne S. Faulkner*, for the National Association of
Consumer Advocates as amicus curiae.

*Opinion*

ZARELLA, J. In this certified appeal, we consider whether postmaturity interest on a loan continues to accrue after the entry of judgment under General Statutes § 37-1, which provides that, in the absence of any agreement to the contrary, interest shall accrue "as an addition to the debt" at an annual rate of 8 percent "from the date of maturity of a debt . . . ." The trial court and the Appellate Court concluded that it does not, deciding instead that the entry of judgment terminated the accrual of postmaturity interest on the loan, leaving any award of postjudgment interest to the trial court's discretionary powers under General Statutes § 37-3a (a), which allows a court to award interest "as damages for the detention of money after it becomes payable." We disagree with those courts and conclude that, under § 37-1 (b), postmaturity interest continues to accrue on the unpaid balance of a loan even after the entry of judgment. Consequently, we reverse the judgment of the Appellate Court and direct that court to remand the case to the trial court for a recalculation of the interest award.

The facts are not in dispute. The defendant, William D. Butts, financed his purchase of a used car with a retail installment loan from the plaintiff, Sikorsky Financial Credit Union, Inc. At the time of purchase, the parties entered into a retail installment contract (contract), which governed the terms of the loan. The contract required the defendant to make regular payments on the loan and set an annual interest rate of 9.14 percent. The defendant granted the plaintiff a security interest in his car. The contract further provided that, in the event of a default, the plaintiff had the right to repossess the car and to demand any deficiency from the defendant.[1] If the defendant failed to pay the deficiency when requested, the contract provided that the plaintiff "may charge [the defendant] interest at a rate not exceeding the highest lawful rate" until the deficiency is paid in full.

The defendant later defaulted on the loan, so the plaintiff repossessed the car and sold it. The fair market value of the vehicle, calculated according to General Statutes § 36a-785 (g), was not enough to cover the full contract balance and the cost of repossession, so the plaintiff demanded the deficiency from the defendant, who did not pay it. The plaintiff brought the present action against the defendant, seeking a deficiency judgment, interest, attorney's fees, and costs as provided for in the contract. The defendant failed to appear, and a default judgment was entered against him.

Thereafter, the trial court held a hearing in damages and awarded the plaintiff the difference between the fair market value of the car and the outstanding principal balance on the contract, as well as the plaintiff's costs

and reasonable attorney's fees. The court also awarded prejudgment interest under § 37-1 at the contract rate of 9.14 percent and discretionary postjudgment interest under § 37-3a at an annual rate of 2 percent.

The plaintiff filed a motion for reargument and reconsideration of the trial court's postjudgment interest award. The plaintiff argued that, under § 37-1 (b), the trial court was required to award postmaturity interest at the contract rate of 9.14 percent until the balance was paid in full because the parties had expressly agreed to allow postmaturity interest. The plaintiff contended that it was entitled to postmaturity interest at the contract rate from the date of maturity (when the deficiency balance became due) until the balance was paid in full. According to the plaintiff, postmaturity interest at the contract rate continues to accrue even after the entry of judgment, leaving the trial court without discretion to order a different rate of interest. In support, the plaintiff cited this court's decision in *Little* v. *United National Investors Corp.*, 160 Conn. 534, 280 A.2d 890 (1971), which held that, under General Statutes (1958 Rev.) § 37-1, if parties to a loan agreed to a specific rate of postmaturity interest, that rate would apply to any unpaid balance, even after the entry of a judgment enforcing the loan agreement. See id., 541–42.

The trial court declined to modify its interest award. The trial court determined that postmaturity interest was the equivalent of prejudgment interest, such that interest after maturity would accrue at the contract rate only until the entry of judgment. The court further determined that postmaturity interest *could* continue to accrue at the contract rate after the entry of judgment only if the parties had made a specific agreement for postjudgment interest. Because the parties in this case had made no such agreement, the trial court determined that any postjudgment interest could be awarded only pursuant to the trial court's discretionary powers under § 37-3a, which the trial court had granted at a rate of 2 percent.

The plaintiff appealed from the trial court's judgment to the Appellate Court.[2] *Sikorsky Financial Credit Union, Inc.* v. *Butts*, 144 Conn. App. 755, 756, 75 A.3d 700 (2013). The plaintiff claimed that the trial court improperly awarded discretionary postjudgment interest at a rate of 2 percent pursuant to § 37-3a because it was required, pursuant to *Little* and § 37-1 (b), to award postjudgment interest at the contract rate of 9.14 percent or, in the alternative, at the legal rate of 8 percent set forth in § 37-1 (a). Id., 759, 761.

The Appellate Court affirmed the trial court's judgment. Id., 763. It determined that the postmaturity interest under the parties' contract terminated when the trial court rendered judgment. See id., 760–61. The Appellate Court also determined that the plaintiff could receive postmaturity interest at the contract rate after the entry

of judgment only if the parties had expressly agreed to postjudgment interest, which they had not. Id., 761.

The plaintiff filed a petition for certification to appeal to this court, which we granted, limited to the following question: "Did the Appellate Court correctly conclude that contractual postmaturity interest was properly terminated upon the entry of the judgment?" *Sikorsky Financial Credit Union, Inc.* v. *Butts*, 310 Conn. 931, 78 A.3d 857 (2013). The defendant has not appeared or argued before this court. We granted a request by the amicus curiae, National Association of Consumer Advocates, to file an amicus brief and to present oral argument.

I

On appeal, the plaintiff maintains its claim that, under § 37-1, it is entitled to postmaturity interest on the deficiency balance beginning from the date of maturity and continuing until the balance is paid in full. The plaintiff asserts that the trial court therefore was required by § 37-1 to order prejudgment and postjudgment interest at the applicable rate. The plaintiff argues that the applicable rate of postmaturity interest in this case is the contract rate of 9.14 percent. In the alternative, the plaintiff argues that, if the rate of postmaturity interest is not clear from the parties' contract, then it nevertheless is entitled to postmaturity interest at the legal rate of 8 percent pursuant. The amicus disagrees and argues that the Appellate Court properly construed the applicable statutes. We conclude that the plaintiff is entitled to postmaturity interest at the rate of 8 percent.

The principles that guide our interpretation of statutes are set forth in General Statutes § 1-2z and are further elaborated on in *Marandino* v. *Prometheus Pharmacy*, 294 Conn. 564, 574–75, 986 A.2d 1023 (2010). We note that we also are guided by our prior interpretations of the meaning and interrelationship of the current interest statutes and their predecessors.

We begin our analysis with a review of the interest statutes at issue in this appeal and their respective functions. Sections 37-1 and 37-3a both relate to interest, but they serve markedly different purposes. They reflect our law's long-standing recognition of two distinct types of interest: (1) interest, usually by agreement, as compensation for a loan (interest eo nomine);[3] and (2) interest as damages for the detention of money. See, e.g., *Selleck* v. *French*, 1 Conn. 32, 33 (1814) (noting distinction between interest "allowed on the ground of some contract express or implied to pay it" and interest "as damage[s]"); see also *Hubbard* v. *Callahan*, 42 Conn. 524, 530 (1875) ("[when], in a bill or note, interest after maturity is expressly reserved, it is treated as interest *eo nomine*, and never as damages" [emphasis in original]).

Section 37-1 governs interest eo nomine, whereas

§ 37-3a (a), by its express terms, applies to interest "as damages for the detention of money . . . ." A more detailed history of these two statutes (and their predecessors) and our cases interpreting and applying them can be found in *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, 304 Conn. 348, 373–83, 39 A.3d 1075 (2012) (*Zarella, J.*, concurring), and *Little* v. *United National Investors Corp.*, supra, 160 Conn. 537–38, 541.

Section 37-1 applies to interest eo nomine as compensation for loans of money or property, as long as the parties have not disclaimed or waived any right to receive interest on the transaction. Section 37-1 provides in relevant part: "(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, in the absence of any agreement to the contrary, be at the rate of eight per cent a year . . . .

"(b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt." This provision embodies a number of principles, as reflected in our cases.

Section 37-1 (a) sets a default rule that a loan of money or property shall be compensated with interest eo nomine at a rate of 8 percent. The phrase "in the absence of any agreement to the contrary" in § 37-1 (a) recognizes, however, that parties may agree to a different interest rate, subject to usury restrictions, or may waive or disclaim any interest on the loan. See, e.g., *Little* v. *United National Investors Corp.*, supra, 160 Conn. 537–38, 541; *Hubbard* v. *Callahan*, supra, 42 Conn. 527. Accordingly, unless the parties to a loan agree to a different rate of interest, or they specifically disclaim any right to interest, a creditor will be entitled to interest eo nomine at the legal rate of 8 percent as compensation for the loan. See General Statutes § 37-1 (a); *Little* v. *United National Investors Corp.*, supra, 537–38; *Hubbard* v. *Callahan*, supra, 527.

Section 37-1 (b) allows the parties to decide whether interest eo nomine will continue to accrue after a loan matures and the balance remains unpaid. See *Little* v. *United National Investors Corp.*, supra, 160 Conn. 541–42; *Globe Investment Co.* v. *Barta*, 107 Conn. 276, 279–80, 140 A. 202 (1928); *Hubbard* v. *Callahan*, supra, 42 Conn. 527; see also *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, supra, 304 Conn. 373–76. Under § 37-1 (b), unless the parties agree otherwise, postmaturity interest will accrue at the legal rate on the unpaid balance of the loan. Thus, if the parties fail to specify whether interest will accrue after maturity, or fail to specify the rate of postmaturity interest, § 37-1 (b) mandates that interest eo nomine shall continue to accrue after maturity at the legal rate. See *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, supra, 376. Furthermore, postmaturity interest under § 37-1 (b) continues to accrue even after the entry of judgment and until the outstand-

ing balance is paid in full. See *Little* v. *United National Investors Corp.*, supra, 542 (agreed on postmaturity interest rate applies to any unpaid loan balance, even after entry of judgment). Consequently, an award of prejudgment and postjudgment interest on a loan that carries postmaturity interest is not discretionary; it is an integral part of enforcing the parties' bargain. See, e.g., id., 541–42; see also *Selleck* v. *French*, supra, 1 Conn. 33 ("[i]nterest will be allowed in all cases [when] there is an express contract to pay it"). The trial court must, therefore, as part of any judgment enforcing a loan, allow prejudgment and postjudgment interest at the agreed rate, or the legal rate if no agreed rate is specified. The trial court is relieved of this obligation only if the parties disclaim any right to interest eo nomine after maturity. See General Statutes § 37-1 (b); *Ballou* v. *Law Offices Howard Lee Schiff, P.C.*, supra, 376; *Little* v. *United National Investors Corp.*, supra, 537–38, 541.

Unlike § 37-1, § 37-3a applies to interest as damages and allows a trial court to award interest as compensation for the detention of money when the duty to pay arises from an obligation other than a loan of money or property, or when the parties to the loan have decided against interest on the loan. See, e.g., *Sosin* v. *Sosin*, 300 Conn. 205, 230, 14 A.3d 307 (2011) (interest for detention of money was allowed when spouse withheld payment of money under divorce settlement); *Winsted Savings Bank* v. *New Hartford*, 78 Conn. 319, 323–24, 62 A. 81 (1905) (interest after maturity may be awarded as damages for detention of money even if parties expressly agreed that contractual interest terminated at maturity). Section 37-3a (a) provides in relevant part: "[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."[4]

The purpose of § 37-3a "is not to punish persons who have detained money owed to others in bad faith but, rather, to compensate parties that have been deprived of the use of their money." *Sosin* v. *Sosin*, supra, 300 Conn. 230; see *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 691, 508 A.2d 438 (1986). An award of interest under § 37-3a may include either or both prejudgment and postjudgment interest. See *Salce* v. *Wolczek*, 314 Conn. 675, 696–97, A.3d (2014) (trial court may award postjudgment interest while declining to award prejudgment interest); *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 310 Conn. 38, 50 n.12, 74 A.3d 1212 (2013) ("[§] 37-3a is not limited by its terms to prejudgment interest, and . . . postjudgment interest also may be awarded under that provision"). Whether a prevailing party will receive interest as damages pursuant to § 37-3a is principally an equitable question lying within the trial court's dis-

cretion. See, e.g., *DiLieto* v. *County Obstetrics & Gynecology Group*, *P.C.*, supra, 54; *Sosin* v. *Sosin*, supra, 227. The trial court also has discretion to choose the rate of prejudgment and postjudgment interest, up to the statutory maximum rate of 10 percent.[5] *Sosin* v. *Sosin*, supra, 246 n.26; see *Sears, Roebuck & Co.* v. *Board of Tax Review*, 241 Conn. 749, 765–66, 699 A.2d 81 (1997); see also General Statutes § 37a-3 (a).

The Appellate Court's conclusion that postmaturity interest is akin to prejudgment interest and that it terminates upon the entry of judgment; see *Sikorsky Financial Credit Union, Inc.* v. *Butts*, supra, 144 Conn. App. 761; is inconsistent with our case law and § 37-1 (b). For example, in *Little* v. *United National Investors Corp.*, supra, 160 Conn. 534, this court held that, under General Statutes (1958 Rev.) § 37-1, if parties to a loan expressly agree to a rate of postmaturity interest, interest eo nomine will accrue on the unpaid balance of the loan from the date of maturity and will continue to accrue as long as the debt remains unpaid, even after the entry of judgment. See id., 541–42. Shortly after this court decided *Little*, the legislature amended § 37-1 to add subsection (b). See Public Acts 1971, No. 783, § 1. This new subsection expanded on the decision in *Little* by creating a new default rule for postmaturity interest. Section 37-1 (b) provides: "Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt." The addition of subsection (b) to § 37-1 accomplished two things. First, it made clear that, unless the parties agree otherwise, postmaturity interest eo nomine will accrue on a loan. Second, if the parties do not choose a specific rate of postmaturity interest, the applicable interest rate will be the statutory legal rate.

Applying these principles to the present case, we conclude that the Appellate Court improperly construed the interest statutes and our case law. Although the Appellate Court concluded that postmaturity interest terminates upon the entry of judgment in the absence of a specific agreement for postjudgment interest; see *Sikorsky Financial Credit Union, Inc.* v. *Butts*, supra, 144 Conn. App. 761; neither § 37-1 (b) nor *Little* contains such a requirement. The decision in *Little* makes clear that postmaturity interest accrues even after the entry of judgment, and § 37-1 (b) did not alter that result but codified it. Only if the parties to a loan expressly reject postmaturity interest will the trial court then have discretion under § 37-3a to award interest as damages for the detention of money. See, e.g., *Winsted Savings Bank* v. *New Hartford*, supra, 78 Conn. 323–24 (trial court may award interest as damages even when parties agreed to waive interest eo nomine).

The parties' loan contract in the present case did not disclaim postmaturity interest, and, thus, the plaintiff was entitled to postmaturity interest under § 37-1 (b).

The parties agreed that, if the defendant failed to pay the deficiency when due, the plaintiff "may charge [the defendant] interest at a rate not exceeding the highest lawful rate" until the deficiency is paid in full. Although the parties did not specify a specific postmaturity interest rate, they clearly did not disclaim any right to post-maturity interest.[6] Accordingly, the plaintiff is entitled to postmaturity interest under § 37-1 (b), and § 37-3a does not apply.

This conclusion requires us also to determine the proper rate of postmaturity interest. The plaintiff claims that it should be the contract rate of 9.14 percent, but we disagree. The parties' contract did not enumerate a specific postmaturity interest rate but, instead, used the phrase "highest lawful rate . . . ." This reference falls short of adopting a specific postmaturity interest rate. Because the parties did not disclaim postmaturity interest, but also did not agree to a specific postmaturity interest rate, the legal rate in § 37-1 applies, and the plaintiff is entitled to interest at the legal rate of 8 percent from the date of maturity until the deficiency is paid in full.

## II

Although we have concluded in part I of this opinion that the rationale of the Appellate Court is untenable, the amicus has offered other arguments in support of the Appellate Court's judgment. Many of those arguments, which were directed at the interest statutes and the language of the parties' contract, are resolved by our analysis in part I of this opinion. There is, however, one other contention that merits separate consideration. In addition to its other arguments, the amicus argues that the repossession statute; General Statutes § 36a-785; pursuant to which the plaintiff brought its deficiency action, does not allow interest eo nomine under § 37-1 on deficiency judgments. According to the amicus, the common law did not allow for deficiency actions in cases of repossession because repossession of the collateral eliminated a creditor's "right to enforce the underlying contract."[7] In the absence of a common-law remedy, the amicus asserts that any recovery of a deficiency by the plaintiff is limited to that expressly allowed by the statute that authorized the deficiency action, § 36a-785, which does not directly address awards of interest. Thus, the amicus argues that, because § 36a-785 does not expressly authorize the recovery of postmaturity interest under § 37-1, any award of interest is left to the trial court's discretionary powers under § 37-3a.

The plaintiff acknowledges that its right to recover is governed by § 36a-785 but maintains that the statute expressly permits it to recover "the balance due under the contract," which includes any interest that would be due under the contract. We agree with the plaintiff.

We begin our analysis, as we must, with the text of the statute at issue. The statutory authority for deficiency actions for retail installment loans is found in § 36a-785. This statute allows creditors to repossess a motor vehicle if the debtor defaults, subject to certain restrictions. See General Statutes § 36a-785 (a) and (b). If the debtor does not redeem the motor vehicle after repossession, the creditor must sell it. See General Statutes § 36a-785 (c) and (d). The proceeds of the resale then must be applied "(1) to the payment of the actual and reasonable expenses thereof, (2) to the payment of the actual and reasonable expenses of any retaking and storing of said goods, [and] (3) to the satisfaction of the balance due under the contract." General Statutes § 36a-785 (e). Any surplus must be paid to the debtor. See General Statutes § 36a-785 (e). If the proceeds do not cover the creditor's repossession expenses and the balance due under the contract, the creditor may not recover the deficiency, except to the extent provided in § 36a-785 (g). See General Statutes § 36a-785 (f).

Section 36a-785 (g) generally allows creditors to recover a deficiency for motor vehicles with a cash price of more than $2000, subject to certain restrictions. The creditor first must calculate the fair market value of the motor vehicle using a formula specified in the statute. See General Statutes § 36a-785 (g). "If [the fair market] value of the motor vehicle . . . is less than the balance due under the contract, plus the actual and reasonable expenses of the retaking of possession, the holder of the contract may recover from the retail buyer . . . as a deficiency, the amount by which such liability exceeds such fair market value, as defined in . . . subsection [g]." General Statutes § 36a-785 (g).

Section 36a-785 (h) requires a creditor to elect its remedy. That subsection provides in relevant part: "After the holder retakes possession as provided in subsection (a) . . . the retail buyer or anyone who has succeeded to his obligations shall not be liable for any balance due, except to the extent permitted by subsection (g) of this section. The holder may seek a monetary judgment on the contract against the buyer unless the goods have been repossessed, with or without judicial process. Goods purchased under the contract shall not be executed upon to satisfy such judgment. When such judgment becomes final, the holder's security interest in the goods shall be extinguished. . . ." General Statutes § 36a-785 (h).

According to the amicus, subsection (h) limits the plaintiff's recovery of a deficiency to the extent permitted in § 36a-785 (g), which must be construed narrowly in favor of consumers. See, e.g., *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 722, 652 A.2d 496 (1995). The amicus contends that, because subsection (g) does not provide expressly that the plaintiff may obtain interest eo nomine on its underlying contract, the plaintiff

may not receive interest eo nomine and that any interest award is left to the trial court's discretion to award interest as damages under § 37-3a.

We disagree that repossession under § 36a-785 (g) terminates the plaintiff's rights under the contract or prohibits the recovery of interest eo nomine under § 37-1. Subsection (g) limits the extent of a creditor's remedy for a deficiency claim, but only to the extent that it requires the creditor to reduce the balance due under its contract by either the fair market value of the collateral or the actual price for which the creditor sells it, whichever is greater. It does not terminate the operation of the parties' contract.

The text of subsection (g) specifically contemplates the survival of the parties' contract following repossession and defines the deficiency due as "the balance due *under the contract*," less the fair market value of the vehicle[8] and the reasonable expenses incurred in repossessing the vehicle. (Emphasis added.) General Statutes § 36a-785 (g). Notably, the statutory language does not limit a creditor's recovery to only the remaining *principal* balance. See General Statutes § 36a-785 (g). The statute's use of the broader phrase "balance due under the contract" therefore indicates an intention to include principal, interest, fees and other amounts due under the contract. Furthermore, the text of subsection (g) contemplates that the balance due under the contract may change as interest continues to accrue because it does not prescribe a terminus date for determining the contract balance. See General Statutes § 36a-785 (g). This stands in contrast to the directive in the same subsection that the fair market value of the vehicle be determined "as of the date of repossession." General Statutes § 36a-785 (g). We presume that the legislature's decision to require that the fair market value be set at a specific date, on the one hand, and its omission of any similar requirement for determining the contract balance, on the other, were intentional and reflect an acknowledgment that the contract balance will change as interest accrues. Cf. *State* v. *B.B.*, 300 Conn. 748, 759, 17 A.3d 30 (2011) ("[when] a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

Our interpretation is also supported by the text of a related statutory provision that governs the calculation of interest in retail installment agreements. General Statutes § 36a-772 regulates the calculation of interest on retail installment loans. Subsection (a) of § 36a-772 limits interest rates on motor vehicle installment loans, subsection (b) limits interest rates on retail installment loans for any good other than a motor vehicle, and subsection (c) governs the computation of finance

charges. The final sentence of § 36a-772 (c) provides in relevant part: "Nothing contained in sections 36a-770 to 36a-788, inclusive . . . shall be construed to prohibit the computation of the interest component of the finance charge by application of an interest rate to the actual balance of such principal amount financed as may be outstanding from time to time." This sentence expressly authorizes parties to compute interest using the simple interest method. We find this sentence significant to the present case because it applies, by its express terms, to the entire Retail Installment Sales Financing Act, General Statutes § 36a-770 through 36a-788, including the repossession statute at issue, namely, § 36a-785. See General Statutes § 36a-772 (c). The specific reference in this sentence to the repossession and deficiency provisions in § 36a-785 indicates that interest will continue to be computed on the outstanding principal of the loan, even after repossession.[9]

In light of the language of the foregoing statutes, we conclude that repossession under § 36a-785 does not terminate the parties' rights under the contract and thus preserves the general rule that interest eo nomine (at either the contractual or legal rate) continues to accrue after maturity under § 37-1 (b). The plaintiff is entitled to postmaturity interest at the rate of 8 percent from the date of maturity until the balance is paid in full.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court with respect to the award of interest and to remand the case to the trial court to reconsider the award of interest in accordance with this opinion.

In this opinion the other justices concurred.

* This appeal originally was argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald and Espinosa. Thereafter, Judge Keller was added to the panel and read the briefs and appendices, and listened to a recording of oral argument prior to participating in this decision.

[1] In the event the fair market value or resale value of the car exceeded the amount owed under the contract, the plaintiff was required under the contract to credit the difference to the defendant.

[2] The defendant did not appear before the Appellate Court.

[3] The Latin phrase "eo nomine" means "by or under that name . . . ." Webster's Third New International Dictionary (2002) p. 760.

[4] Section 37-3a does not apply to: (1) negligence claims; see General Statutes § 37-3b; (2) condemnation proceedings; see General Statutes § 37-3c; or (3) awards of prejudgment offer of compromise interest. See General Statutes § 52-192a.

[5] In the case of debts arising from the provision of hospital services, § 37-3a (b) sets the maximum rate of interest as damages at 5 percent.

[6] The amicus argues that the provision in the parties' contract concerning postmaturity interest was indefinite because it stated that the plaintiff "may" charge interest and therefore did not amount to a valid contract for postmaturity interest. The plaintiff, on the other hand, maintains that the contract used the term "may" as a means to comply with the plain language requirements for consumer contracts. See General Statutes § 42-152. We need not resolve this dispute because, even if the parties' contract was indefinite, it would have no impact on our conclusion. What matters for our purposes is that the parties did not disclaim or waive postmaturity interest. In the absence of such a disclaimer or waiver, the default rule in § 37-1 (b) applies, and postmaturity interest accrues pursuant to statute.

[7] We take no position on the validity of the assertion of the amicus that the common law forbade deficiency actions after the repossession of an automobile. In light of our conclusion that the text of § 36a-785 permits the plaintiff to recover interest eo nomine on a deficiency claim, an analysis of the common law and its relationship to the statute is unnecessary. See General Statutes § 1-2z; see also, e.g., *Marandino* v. *Prometheus Pharmacy*, supra, 294 Conn. 574–75.

[8] If the vehicle is resold and the actual resale price exceeds the fair market value of the vehicle, the actual resale price controls for purposes of this equation. See General Statutes § 36a-875 (g).

[9] Although it could be argued that the reference in § 36a-772 (c) to the entire Retail Installment Sales Financing Act (act) was merely a matter of convenience, other portions of that act demonstrate that, when the legislature intended to render certain provisions inapplicable to the repossession statute at issue, § 36a-785, it did so expressly. See, e.g., General Statutes § 36a-778 ("[t]he restriction on charges herein provided shall not apply to any expenses permitted under section 36a-785").